IBEC Housing International, Inc., demandante y recurrente, *v.* Banco Comercial de Mayagüez, Bracero & Bravo Const. Corp., Inc., demandados y recurridos.

*Número:* R-85-21    *Resuelto:* 19 de mayo de 1986

■■■■■■■■■■■■■■

■■■■■■

*Edilberto Berríos Dávila,* abogado de la parte recurrente; *Carlos Martínez Vélez* de *Montañez & Alicea,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

## I

IBEC Housing International, Inc. (IBEC), contratista general encargada de la construcción de 1,126 unidades de vivienda en Mayagüez, subcontrató en noviembre de 1974 a Bracero & Bravo (B & B) la fase estructural en hormigón y bloques así como el replanteo, relleno y compactación del área, por el precio de $3,017,000 a pagarse contra certificaciones mensuales que sometería B & B según progresara la obra. El capital de operación lo obtuvo B & B de una línea de crédito que le facilitó el recurrido Banco Comercial de Mayagüez (Banco) por $100,000 ampliada luego a $150,000. Para asegurar su pago, el 29 de noviembre de 1974 B & B cedió al Banco todos los derechos y acciones que a aquélla correspondían en el subcontrato con IBEC.

El 3 de diciembre de 1974 IBEC otorgó un reconocimiento (*acknowledgment*) de la cesión de créditos en la que sin aprobarla[1] limita su obligación "a asegurarse de que cualquiera y todos los cheques pagaderos a Bracero & Bravo Construction Corp. bajo los términos del contrato . . . se expidan conjuntamente a nombre de Bracero & Bravo y el Banco Comercial de Mayagüez". Asimismo, con posterioridad al reconocimiento por IBEC de la referida cesión de derechos a favor del Banco, y también para atender a la escasez de recursos de

---

[1] En dicho documento IBEC hizo constar que hacía expresa reserva de todos sus derechos bajo el subcontrato.

B & B, la recurrente IBEC le hizo anticipos de dinero y le suplió materiales de construcción fuera de los pactados en el subcontrato, que acordaron imputar al pago de las correspondientes certificaciones por trabajos realizados. Para recobrar dichos fondos y costo de materiales, IBEC dedujo su importe de las certificaciones núms. 13, 14, y 16–22, así compensó sus créditos posteriores a la cesión con las deudas originales.

El 9 de noviembre de 1976 IBEC notificó a B & B la terminación del subcontrato por incumplimiento de ésta, le prohibió toda intervención en el proyecto y se hizo cargo de concluir la fase estructural de la obra. Al día siguiente IBEC presentó demanda de sentencia declaratoria contra B & B y el Banco en la que pide que se declare su derecho a concluir la obra sin interferencia del Banco; a suspender todo pago a B & B hasta la liquidación del proyecto, y a utilizar en la terminación de la obra cualesquiera fondos no pagados a B & B (que incluyen el importe de certificaciones por trabajo realizado previamente cedido al Banco) y el balance de los fondos no certificados por B & B. Contestó el Banco impugnando el derecho de IBEC a recobrar mediante compensación contra B & B los anticipos de dinero y el costo de materiales en perjuicio de la cesión de derechos hecha por la subcontratista y formuló reconvención en que reclama el importe íntegro de las certificaciones cedidas sin deducciones hasta cubrir su acreencia por una suma estimada en exceso de $250,000.

En su día ambas partes solicitaron sentencia sumaria y el 17 de junio de 1983 la sala de instancia dictó sentencia parcial en la que desestima la solicitud de IBEC, declara con lugar la reconvención del Banco y en su consecuencia ordena a IBEC pagar al Banco la cantidad que en vista oral a ese fin se determine como asegurada por las certificaciones de pago núms. 13, 14, y 16–22. En extensa y bien fundamentada opinión se basó el juez sentenciador en el Art. 1152 del Código Civil que permite al deudor (IBEC en este caso) dentro de la cesión de derechos, oponer la compensación de las deudas anteriores a

ella, pero no las posteriores. Contra dicha sentencia recurrió IBEC a este Tribunal (R-83-302) y denegamos la revisión.

Devuelto el caso a instancia para liquidación de lo reclamado, las cuantías pertinentes fueron objeto de estipulación por las partes. La recurrente IBEC cuestionó la finalidad de la sentencia, aun después de denegado el recurso de revisión, porque siendo una sentencia parcial que adjudica más de una reclamación, no se cumplió con el requisito de concluir que no existe razón para posponerla hasta la solución total del pleito. Regla 43.5 de Procedimiento Civil. El tribunal desestimó el planteamiento, pero oyó y resolvió, dejando a un lado los impedimentos de cosa juzgada, una nueva defensa promovida por IBEC en su réplica consistente en que ella nada adeuda al Banco Comercial porque éste no aplicó los pagos de certificaciones recibidos específicamente a la línea de crédito y sí a otras deudas de B & B.[2] Desestimada esta defensa y aprobadas las estipulaciones sobre cuentas, el tribunal dictó sentencia por la que condenó a IBEC a pagar al Banco Comercial de Mayagüez la cantidad de $310,573 con costas e intereses legales y $1,500 de honorarios de abogado.

Recurrió por segunda vez IBEC en revisión ante este Tribunal. El 7 de febrero de 1985 expedimos el auto. En un plan de relitigación total del caso, señala como errores: 1) habérsele negado derecho a compensar las deudas de B & B; 2) no permitirle usar los fondos deducidos de las certificaciones para terminar la obra; 3) interpretación equivocada del contrato; 4) considerar la sentencia parcial cosa juzgada o preceptiva de ley del caso,[3] y 5) la imposición de intereses legales y honorarios de abogado.

---

[2] La defensa se formula por IBEC con ocho (8) años de tardanza en abierta contradicción de la Regla 10.2 de Procedimiento Civil que ordena su inclusión en la alegación respondiente. La recurrente abandonó el planteamiento en revisión.

[3] El cuarto señalamiento de error resultará académico por la consideración ahora en revisión de los tres anteriores que no merecieron la expedición del auto en el primer recurso ante este Tribunal.

## II

■ Este caso nos ofrece una oportunidad de examinar la figura de la cesión de crédito en nuestro ordenamiento jurídico. Díez-Picazo la describe como "un negocio jurídico celebrado por el acreedor cedente con otra persona, cesionario, por virtud del cual aquél transmite a éste la titularidad del derecho de 'crédito cedido' ". L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1979, Vol. 1, pág. 789. Puig Peña por su parte, señala que es "aquella operación en virtud de la cual un tercero, sustituyendo al acreedor se convierte en el titular activo de una obligación que, no obstante permanece la misma". F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, Ed. Pirámide, 1976, T. III, págs. 242–243. Véanse también: J. R. Vélez Torres, *Curso de Derecho Civil—Derecho de Obligaciones*, San Juan, 1981, T. IV, Vol. 1, pág. 229, y E. Vázquez Bote, *Derecho Civil de Puerto Rico*, San Juan, Eds. Jurídicas, 1973, T. III, Vol. 1, pág. 319.

■ Nuestro Código Civil limita la reglamentación sobre esta figura a señalar los efectos que tiene, principalmente con el deudor. "La cesión convencional se verifica por negocio jurídico entre el acreedor primitivo, conocido como cedente, y el nuevo, conocido como cesionario, mediante el cual aquél transmite el crédito a éste sin que la relación jurídica sufra en su contenido." Vélez Torres, *op. cit.*, pág. 229. El cesionario se instala en la misma posición y relación obligatoria con respecto al deudor a partir de la transmisión del crédito. Es una transmisión del crédito que hace el acreedor o cedente al cesionario por un acto ínter vivos que cumple una función económica de mucha importancia y utilidad en la economía moderna. La figura viabiliza la circulación de los créditos en el comercio y es de particular utilidad en el sistema bancario moderno. Díez-Picazo, *op. cit.*, pág. 789.

■ Para que la enajenación del crédito a través de una cesión tenga validez, tiene que existir un crédito transmisible fundado en un título válido y eficaz. Es indispensable que sea un crédito existente que tenga su origen en una obligación que sea válida y eficaz. Díez-Picazo, *op. cit.*, pág. 791. Para que la cesión sea eficaz frente a terceros, es preciso que su fecha conste por modo auténtico según lo dispone el Código. "La notificación es el instrumento técnico que sirve para vincular al deudor con el cesionario." Vázquez-Bote, *op. cit.*, pág. 325.

■ En otras palabras, el derecho protege al deudor que ignora la cesión y evita que se agrave su condición. Por eso el Art. 1417 libera al deudor "que antes de tener conocimiento de la cesión", satisface al acreedor original, 31 L.P.R.A. sec. 3942. *Caguas Company Inc.* v. *López*, 59 D.P.R. 264 (1941); *Mario Mercado e Hijos* v. *Olivieri*, 60 D.P.R. 877 (1942); *U.S. Casualty Co.* v. *P.R. & A. Ins. Co.*, 98 D.P.R. 489 (1970).

■ Una vez que el deudor ha sido notificado de la cesión sólo puede extinguir su deuda pagando al cesionario. El cambio de acreedor no empeora la situación del deudor y no lo priva de las reclamaciones que tenía frente al cedente a menos que haya consentido. Nuestro Código Civil regula el derecho de compensación del deudor frente al acreedor cuando ocurre una cesión de derechos en el Art. 1152 (31 L.P.R.A. sec. 3224), que dispone:

> El deudor que hubiere consentido en la cesión de derechos hecha por un acreedor a favor de un tercero no podrá oponer al cesionario la compensación que le correspondería contra el cedente.
>
> Si el acreedor le hizo saber la cesión y el deudor no la consintió, puede oponer la compensación de las deudas anteriores a ella, pero no la de las posteriores.
>
> Si la cesión se realiza sin conocimiento del deudor, podrá éste oponer la compensación de los créditos anteriores a ella y de los posteriores hasta que hubiese tenido conocimiento de la cesión.

Sólo cuando el deudor consiente a la cesión es que pierde el derecho de oponer al cesionario la compensación que le corresponde frente al cedente. Del segundo párrafo del Art. 1152 se desprende que si lo que hubo fue una mera notificación y el deudor no consintió, "puede oponer la compensación de las deudas anteriores . . . pero no la de las posteriores" a la cesión. Finalmente, si nunca fue notificado el deudor podrá oponer todas las compensaciones hasta la fecha en que tenga conocimiento de la cesión:

> Es sabido que el acreedor no necesita el consentimiento de su deudor para ceder el crédito, aunque interese al primero hacer la correspondiente notificación al segundo para evitar que el deudor quede libre de la obligación pagando de buena fe al acreedor anterior (art. 1.527 C.c.). Ello no es ningún obstáculo para que puedan darse las tres hipótesis que considera el artículo 1.198: la de su primer párrafo, consistente en *haber consentido* el deudor la cesión del crédito; la del segundo párrafo, en el sentido de *no haberla consentido,* y la del tercero o de *no haberla conocido.* Parece que sólo el segundo caso es rigurosamente consecuente con el efecto automático de la compensación, pues queda admitida la compensación de los créditos anteriores a la cesión, pero no la de los posteriores, y, por supuesto, sólo los créditos anteriores pueden haberse compensado, pues sólo antes de la cesión el acreedor cedente es todavía "acreedor principal del otro", como dice el número 1. del art. 1.196. J. Puig Brutau, *Fundamentos de Derecho Civil,* 2da ed., Barcelona, Ed. Bosch, 1976, T. I, Vol. 2, pág. 455.

Examinado nuestro ordenamiento jurídico sobre la cesión de créditos y de derecho, procede la adjudicación final de este caso.

## III

Al ser notificada de la cesión por B & B al Banco de su interés económico en el subcontrato, IBEC, deudora por trabajo realizado, quedó obligada con el Banco cesionario. Convino, además, en expedir conjuntamente a favor de B & B y

su cesionario los cheques de certificaciones y hasta innecesariamente solicitó y obtuvo el consentimiento del Banco cuando acordó liberar al subcontratista parte del 10% retenido. Admitido el destino de fondos para pagar al Banco, va contra sus propios actos la recurrente IBEC al sostener que por no haber consentido expresamente la cesión de derechos la misma no le afecta.

Del párrafo segundo del Art. 1152 queda ordenado que la eficacia de la cesión de derecho no depende del consentimiento del deudor. Basta con que la cesión le sea notificada —e IBEC hizo un reconocimiento (*acknowledgment*) escrito de la notificación— para que se active la prohibición de oponer al cesionario la compensación de deudas posteriores a ella, como lo es la que intentó cobrar la recurrente IBEC mediante descuento de las certificaciones aprobadas y no pagadas.

La cesión de crédito tiene un propósito esencial de garantía. Las reglas del Art. 1152 (31 L.P.R.A. sec. 3224) tienden a evitar que el cesionario o nuevo acreedor pierda fraudulentamente la seguridad de pago de su acreencia. La pretendida compensación opuesta por IBEC al Banco de los créditos por dinero anticipado y materiales, mediante deducciones de las certificaciones de trabajo realizado, tiene el efecto de disolver [4] la garantía que por la cesión había obtenido el Banco para su crédito. En el convenio posterior a la cesión de derechos entre IBEC y la subcontratista B & B para suplir anticipos de dinero y materiales, ningún derecho adquirió IBEC sobre el importe de las certificaciones por labor realizada, pues ya esos dineros no le pertenecían a B & B; los había cedido al Banco para amortizar sus deudas.

---

[4] Hecha la deducción convenida a espaldas del Banco cesionario, las certificaciones fueron prácticamente canceladas; por ejemplo, la núm. 16 por $172,437.56 fue reducida a $19.47; la núm. 17 por $143,500 quedó en $8.47, y la núm. 20 por $322,494.57 se redujo a $9.05. De esta forma IBEC obtuvo para sí unos dineros que por la cesión pertenecían al Banco.

■

■ Confrontamos, por tanto, un acto de vulneración de garantía, con pleno conocimiento de los actores IBEC y B & B del derecho adquirido por el Banco en el importe de dichas certificaciones. "[T]iene mala fe el que, conociendo un determinado acto jurídico, obra como si lo ignorase; . . . siempre que el conocimiento del hecho de la cesión se dé en el deudor, se está fuera del supuesto legal, y, por lo tanto, no quedará libre el expresado deudor. De donde se deduce que, no habiéndose extinguido la obligación legalmente, es ineludible el pago." J. Manresa, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1969, T. X, Vol. 1, pág. 559.

El incumplimiento del subcontrato por B & B y la necesidad de IBEC de hacerse cargo de la terminación de la obra no le confiere derecho a utilizar para ese fin fondos correspondientes a certificaciones por trabajo realizado, ganados por B & B antes de su cesantía, pues la sustitución del subcontratista no deroga la cesión de derechos al Banco.

Finalmente, la contumaz y prolongada resistencia de la recurrente IBEC al cumplimiento de obligaciones libremente contraídas justifican a plenitud la imposición de intereses legales y honorarios de abogado.

Por las razones descritas en esta opinión, *se confirmará la sentencia del tribunal de instancia.*

El Juez Asociado Señor Rebollo López no intervino.