THE COMMONWEALTH INSURANCE COMPANY, demandante y recurrida, *v.* COMPAÑÍA DE FOMENTO INDUSTRIAL DE PUERTO RICO y LOCK JOINT PIPE CO., demandadas y recurrentes.

*Número:* R-84-283     *Resuelto:* 20 de enero de 1989

*Giselle López-Bajandas*, de *Domínguez & Totti*, abogada de Lock Joint Pipe Co., recurrente; *José A. Andreu García*, abogado de la Compañía de Fomento Industrial, recurrente; *Carlos Martínez Vélez*, de *Montañez, Alicea & Rosa-Resto*, abogado del Banco Comercial de·Mayagüez.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Mediante contrato de fecha 22 de septiembre de 1975, la Compañía de Fomento Industrial de Puerto Rico, dueña de un proyecto conocido como Cidra Industrial Park, contrató con Alturas Construction, Inc. la construcción de la primera etapa de dicho proyecto por la suma de $272,988. Resulta pertinente señalar que, respecto a la "interacción" entre el saldo o pago final por parte de la Compañía de Fomento Industrial a Alturas Construction, Inc. y el pago por esta última de la mano de obra y materiales a ser utilizados en dicho proyecto, en el referido contrato de construcción se dispuso que:

13. *FINAL PAYMENT*
    (a)  Upon (1) completion and acceptance of all work included under this Contract, (2) performance of satisfactory operation and acceptance of tests, (3) submission by the Contractor of the approvals required from other Governmental Agencies, including but not limited to construction permit and receipt issued by the State Insurance Fund indicating that all workmen's compensation premiums payable by the Contractor relative to all work under this Contract have been paid in full, *(4) submission of acceptable evidence as to satisfaction of all claims,* (5) a certificate by the Engineer as to satisfactory performance and completion of all the work required, including also a Certificate of Release in form provided by Pridco, and (6) ap[p]roval by Pridco, the Contractor shall be paid the whole amount of money accruing to said Contractor under the contract, except such sum or sums of money as may have been already paid, and as may be lawfully retained under any of the provisions of the contract herein set forth.
    (b)  *As satisfactory evidence as to payment of all claims, Pridco may require the Contractor to furnish releases or receipts from all persons performing work or services and rendering materials to the Contractor.* Payments in part or in full made by Pridco to the Contractor, without requiring the furnishing of such release or receipt, shall in the nowise impair

the obligation of any surety or sureties under any bond or bonds furnished under this contract, and shall not be interpreted to impose any liability on Pridco because of such payments.

(c) Acceptable [sic] of final payment by the Contractor shall operate as and shall be a release to Pridco to all claims or liabilities under this contract for any thing done or furnished or relating to the work under this contract or for any act or neglect of Pridco, or its agents, related to or connected with the contract. (Énfasis suplido.)

Procede que se señale, en adición, que como requisito indispensable de dicho contrato de construcción la Compañía de Fomento Industrial exigió de Alturas Construction, Inc. la prestación de una póliza de seguros que garantizara el pago de la mano de obra y de los materiales. La referida póliza de seguros fue expedida por The Commonwealth Insurance Co.

Con el propósito de garantizar una *línea de crédito* que el Banco Comercial de Mayagüez le otorgara en relación con la construcción del proyecto en controversia, Alturas Construction, Inc. otorgó a favor del mencionado banco un contrato de cesión de los pagos que dicha compañía constructora habría de recibir de la Compañía de Fomento Industrial con motivo del proyecto Cidra Industrial Park. Dicho contrato de cesión fue otorgado, ante notario público, el día 8 de octubre de 1975. El contrato de construcción que fuera otorgado entre la Compañía de Fomento Industrial y Alturas Construction, Inc. se hizo formar parte del contrato de cesión que esta última otorgara a favor del Banco Comercial de Mayagüez.(1) Dicho contrato de cesión fue aprobado por la Compañía de Fomento Industrial.

---

(1) En el contrato de cesión otorgado se hizo constar, en lo pertinente, que:
"—That in consideration to the fact that the ASSIGNEE BANCO COMERCIAL DE MAYAGUEZ, has granted a loan to the assigner ALTURAS CONSTRUCTION, INC. this Corporation hereby CEDES, ASSIGNS, TRANSFERS AND CONVEYS, irrevocably, in favor of the ASSIGNEE BANCO COMER-

Alturas Construction, Inc. satisfizo al Banco Comercial de Mayagüez todos los préstamos que bajo la mencionada línea de crédito dicha institución financiera le había hecho, *excepto* un último préstamo que por la suma de $30,900 le hizo el Banco Comercial de Mayagüez el 15 de julio de 1976. Dicha corporación constructora no pudo concluir el proyecto de Cidra Industrial Park, haciéndose cargo de la obra la fiadora The Commonwealth Insurance Co. Al terminarse la misma, se le adeudaba dinero a varios de los suplidores de materiales que Alturas Construction, Inc. había utilizado en el mencionado proyecto.

Existiendo un retenido en poder de la Compañía de Fomento Industrial ascendente a la suma de $27,303.21, el Banco Comercial de Mayagüez le reclamó el pago de su deuda. La Compañía de Fomento Industrial se negó a pagar en vista de unas reclamaciones por parte de unos suplidores de materiales a los que Alturas Construction, Inc. le había quedado a deber dinero y una de The Commonwealth Insurance Co., la cual reclamaba la cantidad de $59,449.79, suma que ésta alegadamente había gastado en terminar la obra.

■ Así las cosas, The Commonwealth Insurance Co. demandó a la Compañía de Fomento Industrial en cobro de su acreencia. Días después, el Banco Comercial de Mayagüez igualmente demandó a la Compañía de Fomento Industrial en cobro de la suya. En vista de ello, la Compañía de Fomento Industrial —*al amparo de las disposiciones de la Re-*

---

CIAL DE MAYAGUEZ, all payments that said Corporation will receive from PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY ('PRIDCO') for work performed in the construction of Project No. L-274-A-73 at Cidra, Puerto Rico, as per contract entered into between ALTURAS CONSTRUCTION, INC., and PRIDCO, *copy of which is attached and made to form part of this assignment.*" (Énfasis suplido.) Apéndice, pág. 53.

*gla 19 de Procedimiento Civil*—(²) demandó a Alturas Construction, Inc., a The Commonwealth Insurance Co. y a cuatro suplidores de materiales a los que Alturas Construction, Inc. le adeudaba dinero, entre éstos, la aquí recurrente Lock Joint Pipe Co., a la cual se le adeudaba la suma de $8,262.16.

Los casos fueron consolidados. Señalado y celebrado el juicio, el Comisionado de Seguros de Puerto Rico compareció en representación de The Commonwealth Insurance Co. —la cual estaba en proceso de liquidación— aceptando su responsabilidad respecto a la reclamación de Lock Joint Pipe Co. Resulta pertinente señalar que la prueba presentada demostró que la cantidad de dinero adeudada a Lock Joint Pipe Co. era por concepto de materiales entregados a Alturas Construction, Inc. en los meses de octubre de 1975 y en febrero, marzo y abril de 1976.

El Tribunal Superior de Puerto Rico, Sala de San Juan, dictó sentencia que resolvía que la suma de dinero en poder de la Compañía de Fomento Industrial por concepto de retenido debía ser pagada por ésta al Banco Comercial de Mayagüez por el fundamento, en síntesis, de que el contrato de cesión otorgado entre dicha institución financiera y Alturas Construction, Inc. era uno válido y no se había "probado debidamente el derecho de las otras partes reclamantes sobre

---

(²) *"REGLA 19. PROCEDIMIENTOS PARA OBLIGAR A RECLAMANTES ADVERSOS A LITIGAR ENTRE SI*

"Todas aquellas personas que tuvieren reclamaciones contra el demandante podrán ser unidas como demandadas y requerírseles para que litiguen entre sí dichas reclamaciones, cuando las mismas fueren de tal naturaleza que el demandante estaría o podría estar expuesto a una doble o múltiple responsabilidad. No será motivo para objetar a la acumulación el que las reclamaciones de los distintos reclamantes a los títulos en los cuales descansan sus reclamaciones no tengan un origen común o no sean idénticos sino adversos e independientes entre sí, o que el demandante asevere que no es responsable en todo o en parte de lo solicitado por cualquiera de los reclamantes. Un demandado que se hallare expuesto a una responsabilidad similar puede obtener el mismo remedio a través de una reclamación contra coparte o reconvención. Las disposiciones de esta regla suplementan y no limitan la acumulación de partes permitida en la Regla 17." 32 L.P.R.A. Ap. III.

la suma retenida, con preferencia sobre el indicado Banco".
Apéndice, págs. 14–15.

Inconforme, Lock Joint Pipe Co. recurrió ante este Tribunal mediante la radicación en tiempo del correspondiente recurso de revisión. En el mismo, le imputó al tribunal de instancia haber errado:

> ... al determinar que el derecho preferente del materialista Lock Joint Pipe Co. quedó subordinado por el contrato de cesión, sin causa, otorgado entre Alturas Construction, Inc. y Banco Comercial de Mayagüez. Recurso de revisión, pág. 3.

Expedimos el auto de revisión solicitado. Estando en condiciones de resolver el recurso, procedemos a así hacerlo.

## I

Bajo el transcrito señalamiento de error, la recurrente Lock Joint Pipe Co. elabora dos argumentos. En primer lugar, alega que el contrato de cesión de pagos otorgado el día 8 de octubre de 1975 entre el Banco Comercial de Mayagüez y Alturas Construction, Inc. *es nulo* por razón de que a la fecha de su otorgación el mismo adolecía de causa. Ello en virtud de que, según la recurrente, dicho contrato fue otorgado en garantía de un préstamo futuro, esto es, el préstamo de fecha 15 de julio de 1976 por la suma de $30,900 que le concediera la mencionada institución financiera a Alturas Construction, Inc.

En segundo lugar, alega la recurrente Lock Joint Pipe Co. que, independientemente de lo anteriormente señalado, la sentencia recurrida no puede prevalecer. Sostiene que su acreencia —esto es, la de un suplidor de materiales— es una preferente "que no puede ser desnaturalizada mediante pacto [del constructor de una obra] con un acreedor ordinario", recurso de revisión, pág. 7, sobre todo cuando se considera que el contrato de construcción acordado en el presente caso entre la Compañía de Fomento Industrial y Alturas

Construction, Inc. se hizo formar parte del contrato de cesión otorgado entre esta última y el Banco Comercial de Mayagüez, y que el mismo proveía, como condición previa al pago final de la obra, para el pago de los suplidores de labor y materiales.

## II

La alegación a los efectos de que el contrato de cesión de pagos(3) otorgado entre el Banco Comercial de Mayagüez y Alturas Construction, Inc. el 8 de octubre de 1975 "adoleció de causa" no es correcta.(4) La prueba presentada por la referida institución bancaria a nivel de instancia, tanto oral como documental,(5) demostró que el Banco Comercial de Mayagüez le extendió *una línea de crédito* a la mencionada corporación constructora, *efectiva la misma el día 1ro de octubre de 1975*, a base de la cual el Banco Comercial de

---

(3) Nos informa el tratadista J. Puig Brutau, en su obra *Fundamentos de Derecho Civil*, 2da rev., Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, pág. 225, que:

"En términos generales cabe afirmar que la cesión de créditos es el contrato por el que una de las partes, titular del derecho o cedente, lo transmite a la otra parte, adquiriente o cesionario, en forma que ésta tendrá derecho a exigir del deudor la prestación debida a la primera."

(4) Al respecto nos ilustra Puig Brutau, *op. cit.*, págs. 226–234:

"Entre cedente y cesionario existirá en tal caso una relación de valuta, que explica por qué causa de valor dado o entendido se ha realizado el cambio de acreedor.

". . . [L]a cesión representa un acto de disposición del crédito cuya justificación se halla en la índole de la relación de valuta que habrá mediado entre cedente y cesionario. En otras palabras, la cesión requiere una justa causa en el mismo sentido que la *traditio*.

"El adquirente de un crédito o cesionario puede hacerlo a título oneroso o gratuito. Lo normal será lo primero y, por consiguiente, a cambio de pasar a ser acreedor del deudor cedido habrá tenido que realizar una prestación a favor del cedente. Generalmente se tratará de una cesión a cambio de un precio en dinero, por cuya razón deberá efectuar el pago de la manera convenida. Esta prestación del cesionario constituye la relación de valuta entre las partes contratantes y justifica la adquisición del crédito cedido." (Énfasis suprimido.)

(5) *Exhibit* 1 del Banco Comercial de Mayagüez (*Loan Ledger Card*).

Mayagüez le concedió a Alturas Construction, Inc. varios préstamos o adelantos de dinero. El primero de dichos préstamos le fue concedido a Alturas Construction, Inc. el día 1ro de octubre de 1975 por la cantidad de $6,000 y el último el día 15 de julio de 1976 por la suma antes mencionada de $30,900. Este último préstamo o adelanto de dinero quedó al descubierto y es el que es objeto de reclamación en el presente caso por parte del Banco Comercial de Mayagüez. La concesión de esta línea de crédito fue la "causa o consideración" del contrato de cesión de pagos otorgado entre dichas partes. Dicho contrato, en consecuencia, no adolece del defecto de causa y es uno válido en derecho. Art. 1226 del Código Civil, 31 L.P.R.A. sec. 3431.

### III

Como expresáramos anteriormente, la recurrente Lock Joint Pipe Co. sostiene que —independientemente del hecho de que el contrato de cesión en controversia sea o no uno nulo— procede la revocación de la sentencia recurrida por cuanto de acuerdo con nuestra jurisprudencia su acreencia, como suplidor de materiales de una obra, es de superior rango a la del Banco Comercial de Mayagüez. En apoyo de su posición cita el Art. 1489 del Código Civil, 31 L.P.R.A. sec. 4130, y nuestras decisiones en *Empresas Capote, Inc. v. Tribunal Superior*, 103 D.P.R. 765 (1975), y *R. Román & Cía. v. J. Negrón Crespo, Inc.*, 109 D.P.R. 26 (1979).

Como es sabido, el citado Art. 1489, ante, de nuestro Código Civil dispone:

Los que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación.

En relación con la acción radicada por un suplidor de mano de obra o de materiales en cobro de lo que se le adeuda,

es enteramente correcto que "hemos reconocido invariablemente —basado en consideraciones de orden público, moral y de equidad— que se trata de una *acción directa* contra el dueño de la obra hasta la cantidad que éste adeude al contratista a la fecha en que se hace la reclamación, *cuyo efecto es sustraer el importe de lo reclamado de los otros acreedores particulares del contratista por otros conceptos*" (énfasis suplido) *Empresas Capote, Inc. v. Tribunal Superior*, ante, pág. 770; *Amer. Surety Co. v. Tribunal Superior*, 97 D.P.R. 452 (1969), y que los caracteres de la referida acción directa "son los de ser una verdadera medida de ejecución y medio de pago al acreedor, otorgar un derecho de preferencia a los acreedores favorecidos, *y la inoponibilidad de excepciones que no surjan del propio acercamiento jurídico de donde surgió inicialmente el crédito que se ejercita*". (Énfasis suplido.) *R. Román & Cía. v. J. Negrón Crespo, Inc.*, ante, pág. 31.

▮ Hemos establecido, sin embargo, que cuando el contratista cede a un tercero el crédito que tiene contra el dueño de la obra "'*antes* de que los obreros o abastecedores de materiales hayan intentado su acción, *esta cesión les perjudicará*'" (énfasis suplido y en el original) *Armstrong, Etc. v. Inter-Amer. Builders, Inc.*, 98 D.P.R. 734, 742 (1970), aunque siempre les quedará a salvo a éstos el derecho de atacar la cesión si entienden que la misma es simulada y que fue realizada en su fraude. J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1969, T. X, Vol. 2, pág. 735.

▮ De manera pues que, *de ordinario*, habiéndose otorgado un contrato de cesión de pagos entre el contratista de una obra y un tercero en *fecha anterior* a la reclamación de los obreros o suplidores de materiales de dicha obra, *la acreencia de éstos no tendrá prelación o preferencia sobre la del cesionario*.

En el caso particular ante nuestra consideración, sin embargo, y según ello se desprende de la relación de hechos que expusiéramos, en el contrato de construcción otorgado entre la Compañía de Fomento Industrial y Alturas Construction, Inc. *expresamente se pactó*, en el inciso (a) de la cláusula Núm. 13 del mismo, que el pago final por parte del dueño de la obra (P.R.I.D.C.O.) al contratista (Alturas Construction, Inc.) depende de seis condiciones allí enumeradas, entre las cuales se encuentra "la sumisión de evidencia satisfactoria por parte del contratista *en cuanto al pago de todas las reclamaciones*" relacionadas con el proyecto. Por otro lado, en el inciso (b) de dicha cláusula Núm. 13 específicamente se señala que "como evidencia satisfactoria del pago de todas las reclamaciones, [la Compañía de Fomento Industrial] podrá requerir del Contratista que éste le provea relevos o recibos de pagos de todos los obreros y suplidores de materiales del contratista". (Traducción nuestra.) *Esto es, el pago final al contratista (Alturas Construction, Inc.) por parte del dueño de la obra (P.R.I.D.C.O.) está supeditado al pago previo por Alturas Construction, Inc. de todas las reclamaciones provenientes de todos los suplidores de mano de obra y materiales.*

■ Toda vez que "[l]a cesión transfiere el crédito 'tal cual existía antes de la cesión', esto es, 'en la misma condición y estado que tuviera al realizarse la operación'", J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed. rev., Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, pág. 234, y que por tanto "[e]l cesionario se instala en la misma posición y relación obligatoria con respecto al deudor a partir de la transmisión del crédito", *IBEC v. Banco Comercial*, 117 D.P.R. 371, 376 (1986), es forzoso concluir en el caso ante nuestra consideración que el Banco Comercial de Mayagüez está imposibilitado de hacer efectiva su reclamación hasta tanto Lock Joint Pipe Co. cobre lo que se le adeuda.

Ello es así por cuanto el contratista (Alturas Construction, Inc.), bajo el contrato de construcción que otorgó con la Compañía de Fomento Industrial, no puede exigir, ni recibir, el pago final hasta tanto acredite el pago de todas sus deudas ante la Compañía de Fomento Industrial. El Banco Comercial de Mayagüez, su cesionario, tampoco puede hacerlo, pues advino titular exclusivamente de los mismos derechos que ostentaba su cedente.

Por las razones antes expuestas, *se dictará sentencia revocatoria de la emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan, devolviéndose el caso a dicho foro para procedimientos ulteriores consistentes con lo aquí resuelto.*

El Juez Asociado Señor Hernández Denton disiente sin opinión escrita. El Juez Asociado Señor Ortiz no intervino.