# 2009 DTA 84

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE CAGUAS**
**PANEL XI**

MAGLEZ CONSTRUCTION CORP.
Apelado

v.

ELECTRICAL SOLUTIONS; ALTERNATIVE WORKS,
LIQUID CAPITAL DE PUERTO RICO
Apelantes

Núm. KLAN-2008-01243

San Juan, Puerto Rico, a 27 de mayo de 2009

Panel integrado por su Presidente, el Juez Rivera Martínez,
el Juez Colón Birriel y la Juez Jiménez Velázquez

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Liquid Capital Exchange, Inc. h/n/c Liquid Capital de Puerto Rico (en adelante, Liquid Capital) solicita la revocación de la **Sentencia** dictada el 2 de julio de 2008, por el Tribunal de Primera Instancia, Sala de Caguas, Hon. José M. Fernández Luis, Juez, en el caso *Maglez Construction Corporation v. Electrical Solutions; Alternative Works; Liquid Capital de Puerto Rico*, Caso Civil Núm. EAC2008-0008, sobre: consignación. Mediante el dictamen, archivado en los autos copia de su notificación el 7 de julio de 2008, instancia determinó que según nuestro Código Civil, la codemandada Alternative Works, Inc. tiene el exclusivo derecho de percibir la cantidad consignada por el dueño de la obra y demandante, Maglez Construction, Corp (en lo sucesivo, Maglez).

Considerado el recurso presentado por Liquid Capital, concedimos término a Maglez para presentar su alegato. Posteriormente, compareció Alternative Works Co. (en adelante, Alternative Works) solicitando prórroga para presentar su alegato, la que le fue concedida. Por su parte, Maglez solicitó se le relevare de presentar alegato, toda vez que fue designado erróneamente como parte, tomando conocimiento de lo informado.

Así las cosas, Alternative Works presentó su oposición al recurso. Por otro lado, Liquid Capital solicitó ordenáramos la regrabación de los procedimientos, por razón a que interesaba presentar un escrito suplementario discutiendo la prueba oral presentada y admitida en la vista en su fondo. Solicitó, además, se le permitiera presentar un alegato suplementario a su alegato en apelación, lo que le fue concedido.

Tras otros incidentes, Liquid Capital presentó la transcripción, así como su alegato suplementario. Expresó que luego de analizar la transcripción, era forzoso levantar como tercer señalamiento, el que erró instancia al admitir erróneamente cierto testimonio de Alternative Works por constituir prueba de referencia, no obstante a su objeción oportuna y correcta. Por último, Alternative Works replicó al alegato suplementario de Liquid Capital, luego de lo cual el recurso quedo debidamente perfeccionado para su eventual disposición.

Para una adecuada comprensión del asunto ante nuestra consideración y su posterior disposición, exponemos el trasfondo fáctico y procesal que dio origen al recurso.

## II

Maglez fue contratada por la empresa Amgen del Municipio de Juncos para realizar ciertos trabajos de construcción. A los fines de llevar a cabo los trabajos, Maglez contrató a Electrical Solutions, cuya función se circunscribía a realizar labores de instalación eléctrica en la empresa Amgen. Una de las cláusulas del contrato disponía que Maglez retuviese un 10% del monto total de la contratación para satisfacer las deudas de materiales y mano de obra que se adeudaran al finalizar la construcción. El 28 de agosto de 2006, Alternative Works sometió a Electrical Solutions una propuesta para proveer los servicios de mano de obra.

El 15 de septiembre de 2006, Electrical Solutions contrató definitivamente con Alternative Works, para suplir personal y materiales en la realización de trabajos de instalación eléctrica a un costo de $40,000, el que según afirmó Alternative Works, el que luego ascendió a $46,327.18. [1] Tras diversos pagos parciales, quedó por satisfacer una deuda en concepto de mano de obra y materiales de $33,015.47.

Así las cosas, el 5 de octubre de 2006, Electrical Solutions y Liquid Capital suscribieron un contrato de refacción o de compraventa de cuentas por cobrar, denominado *Purchase and Sale Agreement*, a cambio de una partida líquida de dinero, conocido en inglés como "Factoring Agreement". El contrato de refacción fue suscrito por el señor Enrique Ortiz Nieves, presidente de Electrical Solutions (seller), y el señor Alfredo Machado, presidente de la oficina en Puerto Rico de Liquid Capital (factor). En la página 2 del *Purchase and Sale Agreement* se establecía:

*"THE INTENTION OF THE PARTIES HERETO THAT AS TO ALL ACCOUNTS THAT FACTOR ELECTS TO PURCHASE SHALL CONSTITUTE A TRUE PURCHASE AND SALE OF ACCOUNT(S) UNDER §9-318 OF THE UCC AND AS SUCH, THE SELLER SHALL HAVE NO LEGAL OR EQUITABLE INTEREST IN THE ACCOUNTS SOLD."* [2]

Como parte del contrato se incluyó una *Resolución Corporativa* de la Junta de Directores de Electrical Solutions aprobando el contrato con Liquid Capital, fechada el 5 de octubre de 2006. Es menester señalar que el contrato del *Purchase and Sale Agreement* nunca fue notarizado en Puerto Rico. [3]

El 9 de octubre de 2006, Liquid Capital y Electrical Solutions cursaron un documento a Maglez, indicando:

"This arrangement allows Electrical Solution Contractors, Inc. to continue its focus on the delivery of the highest products and services during their growth as the company you've grown to depend on. This arrangement also includes the sale and assignment of all existing and future payments that are or become due on their accounts to Liquid Capital Exchange Inc. under the Uniform Commercial Code. Accordingly, you are hereafter requested to make all future payments as follow:

Liquid Capital Exchange, Inc.

P.O. Box 17000
Greenville, SC 29606." [4]

El documento fue suscrito por el señor Enrique Ortiz Nieves, presidente de Electrical Solutions y el señor Alfredo Machado, presidente de la Oficina en Puerto Rico de Liquid Capital. A partir de la notificación, Maglez envió sus pagos parciales a nombre de Liquid Capital en relación a las labores realizadas por Electrical Solutions.

Al finalizar los trabajos contratados por Maglez, Electrical Solutions emitió once (11) facturas finales por trabajos realizados ascendentes a $40,000. El 29 de agosto de 2007, el señor Ortiz Nieves informó a Liquid Capital de la emisión de facturas a Maglez. El 4 de diciembre de 2007, el presidente de Alternative Works se comunicó con la señora Gladys Calderón quien le dijo que Maglez tenía retenido un 10% a Electrical Solutions

ascendente a $40,000 para el pago de mano de obra. El presidente de Alternative, señor Juan Ortiz, le indicó que retuviera $33,015.47 para la nómina y facturas de los empleados que habían hecho el trabajo eléctrico en Amgen.

El 14 de diciembre de 2007, Alternative Works reclamó a Maglez el pago de ciertas cantidades adeudadas por Electrical Solutions a éstos, relacionados con sus labores en Amgen. Ante la contemporaneidad en los reclamos de pago por parte de Alternative Works, así como la comunicación de Electrical Solutions y Liquid Capital, Maglez presentó el 11 de enero de 2008, una *Demanda de Consignación* ante el Tribunal de Primera Instancia, consignando un cheque certificado por $40,000 a nombre de la Secretaria del Tribunal, Sala de Caguas, a los fines de no estar expuesto a una doble o múltiple responsabilidad. Regla 19 de Procedimiento Civil; 32 L.P.R.A., Ap. III, R. 19; *Goss, Inc. v. Dycrex Const. & Co. S.E.,* 141 D.P.R. 342, 360 (1996).

Liquid Capital compareció mediante escrito titulado *Moción Asumiendo Representación Legal y Solicitando Retiro de Fondos a Favor del Co-demandado Liquid Capital de Puerto Rico*, expresando: a) sobre la cuantía de $40,000 consignada por Maglez, para beneficio de Electrical Solutions; b) que el 29 de septiembre de 2007, Electrical Solutions, le cedió y vendió la acreencia por la cuantía mencionada de $40,000, y a virtud de ello, esa cuantía le pertenecía y correspondía; c) que en la demanda se menciona a Alternative Works, alegada acreedora de Electrical Solutions en la cantidad de $33,015.47; d) que cualquier acreencia que pueda tener Alternative Works contra Electrical Solutions es una independiente que no tiene cabida en la demanda de consignación, e) era harto conocido que cuando un contratista, en este caso, Electrical Solutions, cedía a un tercero, en este caso, Liquid Capital, su crédito contra el dueño, en este caso, Maglez, con relación a una obra, la cesión perjudica a cualquier subcontratista de dicha obra, en este caso, Alternative Works. Citó en apoyo de su contención a *Armstrong, Etc. v. Inter Ame. Builders, Inc.,* 98 D.P.R. 734, 742-743 (1970). Solicitó se declarare con lugar su solicitud y se ordenare el retiro de fondos a favor de Liquid Capital, condenando a Maglez al pago de los intereses gastos, costas y honorarios de abogado por haber hecho una consignación de dinero a sabiendas de que el dinero le pertenecía a Liquid Capital. Así las cosas, el 19 de junio de 2008, se celebró una vista a los fines de determinar a cuál de los codemandados le correspondía la suma consignada por Maglez. Por su parte, instancia determinó que se contestara la demanda y luego se dilucidaría a quién le correspondía el dinero consignado.

Así pues, Liquid Capital contestó la demanda. Solicitó por segunda ocasión el retiro de los fondos consignados, determinando instancia lo que a continuación transcribimos: "petición sin fundamento en esta etapa del proceso." Posteriormente, Liquid Capital solicitó se señalara vista para que las partes demandadas en el litigio expusieran sus posiciones, juicio que fue señalado para el 19 de junio de 2008, en horas de la tarde.

Celebrada la audiencia, según pautada, el 2 de julio de 2008, instancia concluyó que la cantidad consignada por Maglez le pertenecía en su totalidad a la codemandada Alternative Works, Inc. De esa determinación, recurre Liquid Capital señalando que erró instancia:

"A. al concluir que entre Electrical Solutions y Liquid Capital no existió un contrato de cesión de cuentas por cobrar, válido y oponible a terceros.

B. al determinar que la acreencia de Liquid Capital no era una preferente a la reclamada por Alternative Works ante Maglez, y al adjudicar a favor de esta última el dinero consignado.

C. al admitir erróneamente cierto testimonio de Alternative Works que constituía prueba de referencia, a pesar de que dicha evidencia se objetó oportuna y correctamente. (presentado luego de transcribirse los procedimientos y presentar su alegato de réplica)".

# III

En nuestra jurisdicción rige el principio de libertad de contratación. El Artículo 1065 del Código Civil, 31 L. P.R.A. § 3029, establece que todos los derechos adquiridos en virtud de una obligación son transmisibles con

sujeción a las leyes, si no se hubiese pactado lo contrario. Por tanto, la cesión de créditos consiste en un negocio jurídico celebrado entre el acreedor cedente ("seller") y otra persona, el cesionario ("factor"), por virtud del cual el acreedor cedente transmite al cesionario la titularidad del derecho de crédito cedido y todos sus accesorios. Así lo dispone el Código Civil en el Artículo 1418: "La venta o cesión de un crédito comprende la de todos los derechos accesorios, como la fianza, hipoteca, prenda o privilegio." 31 L.P.R.A. § 3943. El cesionario se instala en la misma posición y relación obligatoria con respecto al deudor a partir de la transmisión del crédito. *The Comm. Ins. Co. v. Cía. de Fomento Ind.,* 123 D.P.R. 150, 160 (1989); *IBEC v. Banco Comercial,* 117 D.P.R., 371, 376 (1986).

La cesión convencional se verifica por negocio jurídico entre el acreedor primitivo, conocido como cedente, y el nuevo, conocido como cesionario, mediante el cual el cedente transmite el crédito al cesionario sin que la relación jurídica sufra cambios en su contenido. J. R. Vélez Torres, *Derecho de Obligaciones – Curso de Derecho Civil,* 2da ed., EJC Facultad de Derecho Universidad Interamericana de Puerto Rico, San Juan, 1997, a la pág. 251; *IBEC,* 117 D.P.R., a la pág. 376.

El cesionario se instala en la misma posición y relación obligatoria con respecto al deudor a partir de la transmisión del crédito. Es una transmisión del crédito que hace el acreedor o cedente al cesionario por un acto ínter vivos que cumple una función económica de mucha importancia y utilidad en la economía moderna.

Para que la enajenación del crédito a través de una cesión tenga validez, tiene que existir un crédito transmisible fundado en un título válido y eficaz. Es indispensable que sea un crédito existente que tenga su origen en una obligación que sea válida y eficaz. (Citas omitidas) Para que la cesión sea eficaz frente a terceros, es preciso que su fecha conste por modo auténtico según lo dispone el Código. La notificación es el instrumento técnico que sirve para vincular al deudor con el cesionario. E. Vázquez Bote, *Derecho Civil de Puerto Rico,* San Juan, Eds. Jurídicas, 1973, T. III Vol. 1, a la pág. 325.

Es doctrina reiterada que **un cesionario no puede cobrar su acreencia sin antes cumplir con las condiciones que pactaron el deudor y el cedente en el contrato que dio origen al crédito cedido.** *The Comm. Ins. Co..,* 123 D.P.R., a la pág. 160. Ello implica que, luego de ser notificado de la cesión de crédito, el deudor sólo puede extinguir su deuda si paga la misma al cesionario. De este modo, "[e]l cambio de acreedor no empeora la situación del deudor y no lo priva de las reclamaciones que tenía frente al cedente a menos que haya consentido." *Consejo de Titulares v. C.R.U.V.,* 132 D.P.R. 717, 718 (1993); *IBEC,* 117 D.P.R., a la pág. 377; Artículo 1152 del Código Civil, 31 L.P.R.A. § 3224.

Como podemos apreciar, para que se lleve a cabo una cesión de créditos, no es necesaria la comparecencia ni el consentimiento del deudor. No obstante, **para que la cesión sea oponible a terceros, es preciso que su fecha conste por modo auténtico mediante documento público o documento privado incorporado en un registro público.** *Consejo de Titulares,* 132 D.P.R., a las págs. 717-718; *IBEC,* 117 D.P.R., a la pág. 377; Artículo 1416 del Código Civil, 31 L.P.R.A. § 3941(énfasis nuestro).

De esta manera, la cesión de crédito cumple una función económica de mucha importancia y utilidad en la economía moderna porque viabiliza la circulación de los créditos en el comercio. A su vez, la cesión de crédito tiene un propósito esencial de garantía porque evita que el cesionario o nuevo acreedor pierda fraudulentamente la seguridad de pago de su acreencia. Ello implica que, luego de ser notificado de la cesión de crédito, el deudor sólo puede extinguir su deuda si paga la misma al cesionario. *IBEC,* 117 D.P.R., a la pág. 377.

Entre acreedor y deudor existe una relación de cobertura, en cuanto la prestación debida por el segundo cubre o ha de satisfacer el interés jurídicamente protegido del primero; pero antes de que el crédito se extinga entre estas dos personas por medio del cumplimiento del obligado, puede extinguirse para una de ellas, el acreedor, si lo transmite a título oneroso a favor de un tercero, el cesionario. (Citas omitidas). Por otro lado, entre cedente y

cesionario existirá en tal caso una relación de valuta, que explica porqué causa de valor dado o entendido se ha realizado el cambio de acreedor. *Id.*

A su vez, el Artículo 1489 del Código Civil, § 4130 establece que "los que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista, no tienen acción contra el dueño de ella, sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación." Se ha reiterado que la procedencia de la acción a favor de obreros y materialistas consagrada en el Artículo 1489 del Código Civil, *id.* **está justificada por consideraciones de orden público, esto es, propiciar el pronto pago a quienes ponen su trabajo y materiales en una obra ajena, y también por consideraciones de orden moral para evitar el enriquecimiento del dueño y del empresario mediante el fraude o confabulación.** *American Surety v. Tribunal Superior,* 97 D.P.R. 452, 454-455 (1969).

Sin embargo, se ha sostenido que cuando un contratista cede a un tercero el crédito que tiene contra el dueño de una obra antes de que los obreros o abastecedores de materiales hayan intentado su acción, esta cesión les perjudicará, aunque siempre les quedará a salvo a éstos el derecho de atacar la cesión si se entiende que la misma es simulada y que fue realizada en su fraude. *The Comm. Ins. Co.,* 123 D.P.R., a la pág.159; *Amstrong, Etc. v. Inter–Amer. Builders, Inc.,* 98 D.P.R. 734, 742 (1970). De ordinario, cuando se ha otorgado un contrato de cesión de pagos entre el contratista de una obra y un tercero en fecha anterior a la reclamación de los obreros o suplidores de materiales de dicha obra, la acreencia de los obreros o suplidores no tendrá prelación o preferencia sobre la del cesionario. *The Comm. Ins. Co.,* 123 D.P.R., a la pág. 159.

De este modo, la doctrina científica, al igual que las decisiones de nuestro Tribunal Supremo, ha reconocido que los suministradores de materiales y mano de obra tienen "una acción directa contra el dueño de la obra". *C. Armstrong e Hijos v. Díaz,* 95 D.P.R. 819, 824 (1968)). En cuanto a dicha acción, nuestro Tribunal Supremo en *American Surety Co. v. Tribunal Superior,* 97 D.P.R. 452, 456 (1969), expresó:

"Este carácter directo de la acción produce el importantísimo efecto de sustraer el importe de lo reclamado por el obrero o materialista de las reclamaciones de otros acreedores del contratista, pues desde el instante en que se hace la reclamación al dueño, éste se convierte en deudor de los obreros y materialistas del empresario."

Además, nuestro Tribunal Supremo ha expresado que la acción de los obreros y materialistas, "como verdadera acción directa no está sujeta a las limitaciones de la acción subrogatoria del Art. 1064 del Código Civil, 31 L.R.A. § 3828, le cobijaría como acreedor." *Goss, Inc. v. Dycrex Const. & Co., S.E.,* 141 D.P.R. 342, 351 (1996). A este mismo fin, J. Santos Briz, en su artículo *El contrato de obra y su problemática jurídica,* 56 Rev. Der. Priv. 379, 408 (1972), ha manifestado que:

"...sus caracteres son los de ser una verdadera medida de ejecución y medio de pago al acreedor, otorgar un derecho de preferencia a los acreedores favorecidos, y la inoponibilidad de excepciones. Este último rasgo significa, por un lado, que los actos de disposición sobre el crédito no afectan ni perjudican al acreedor directo; por otro, que la acción directa purga al crédito de todos los vicios, de manera que su titular lo obtiene más perfecto que lo hubiera obtenido su deudor. En definitiva, estas características ponen de relieve la ventaja y razón de ser de la acción directa frente a la indirecta o subrogatoria."

Al mismo lugar continua diciendo Santos Briz: "se trata, pues, de una acción personal no identificable con la subrogatoria derivada del Artículo 1.111 (equivalente al Artículo 1064 nuestro) del Código Civil." Ahora bien, la acción de cobro del obrero o materialista está supeditada a dos requisitos objetivos que se refieren a dos aspectos distintos: que se trate de una obra ajustada alzadamente por el contratista y, además, que la acción verse sobre la cantidad que el dueño de la obra adeude al contratista al hacerse la reclamación. En cuanto a la reclamación al dueño, nuestra jurisprudencia ha establecido que ésta puede hacerse mediante acción judicial o extrajudicial. *Junco Steel Corp. v. CE Design Dev.,* 148 D.P.R. 272 (1999).

De lo anterior claramente se desprende que los obreros y materialistas tienen una acción directa que le confiere un crédito, hasta el importe de lo que el dueño adeude al contratista, por la cantidad que hayan aportado a la obra, ya sea en mano de obra empleada o materiales suplidos. En cuanto a la preferencia otorgada a dicho crédito, se nos dice que "... la Ley establece el privilegio pensando en un supuesto de concurrencia con otros créditos existentes contra el deudor." R. de Ángel Yágüez, *Los Créditos Derivados del Contrato de Obra, Su protección legal en la Legislación Civil*, Editorial Tecnos, Madrid (1969), a la pág. 32. El citado autor continúa diciendo, a la pág. 35:

"En último término, abusando incluso del lenguaje, tendríamos que decir que lo privilegiado en este caso no es el crédito, sino el acreedor. En efecto, la Ley, al conceder esta acción directa, no descarta el normal ejercicio del crédito de sus titulares por la vía ordinaria del 1.111 (equivalente al 1064 nuestro) o del embargo de créditos. Este caso es posible, ya que los beneficiarios de esa acción directa pueden renunciar a su ejercicio. Si, usando del 1.597 actúan directamente contra el propietario, no diremos que su crédito se ha revestido de un privilegio. Lo único que diremos es que la Ley le ha ofrecido a esos acreedores, por motivos de equidad, dos acciones a elegir para el cobro de sus créditos: una, la normal de todo acreedor; **otra, para evitar la concurrencia de otros acreedores y actuar contra el propietario directamente, evitando que hasta el alcance de su crédito se lleve a cabo cualquier ejecución particular o universal por los otros acreedores sobre un determinado bien del activo del contratista: el crédito que éste posee contra el propietario.** La concesión de esa acción suplementaria es lo que será, hablando ampliamente, un privilegio legal." (Énfasis nuestro).

En el presente caso nos enfrentamos ante la figura de un contrato de cesión de cuentas o crédito refaccionario, el cual es parte de un grupo de relaciones contractuales previas entre cuatro partes diferentes. Esto hace la controversia que nos concierne una compleja. De este modo, es vital analizar detenidamente la cadena de pactos que dio pie a la demanda de consignación por parte de Maglez de $40,000 ante instancia.

Primeramente, Amgen contrata a Maglez con el propósito de realizar una obra de construcción en el Municipio de Juncos. Consecuentemente, Maglez contrató a Electrical Solutions para que realizase trabajos de electricidad en la obra a éstos consignada. Electrical Solutions a su vez pactó la adquisición de mano de obra y materiales con Alternative Works. Posterior al perfeccionamiento de todos esos pactos, Electrical Solutions pasó a pactar con Liquid Capital la venta de una serie de facturas a su favor.

Es durante este último contrato que se cierne la controversia que nos atañe. Liquid Capital aduce que en virtud del contrato de refacción perfeccionado entre Electrical Solutions y Liquid Capital, les pertenece a este último la cantidad consignada en instancia por Maglez. No obstante, Alternative Works alega tener un crédito preferente con relación a dicha suma, ya que ostenta un pacto de mano de obra y construcción para con Maglez. Trabada así la controversia, analizamos la legislación y jurisprudencia vigente en torno a ésta, la cual claramente indica que la suma consignada pertenece a Alternative Works, por lo cual procede la confirmación de la sentencia aquí apelada.

Primeramente, nuestro ordenamiento jurídico establece que para que se perfeccione un contrato, basta con el mero consentimiento. [5] En el caso de un contrato de cesión, la jurisprudencia ha establecido que el crédito tiene que ser transmisible en un título válido y eficaz. Según lo planteado en la controversia de marras, Electrical Solutions tenía una serie de créditos exigibles ante diferentes deudores, los que fueron transmitidos a Liquid Capital por medio de un contrato privado. No obstante, para que dicha cesión de créditos fuese oponible a terceros, era preciso que la fecha en que se llevó a cabo el negocio jurídico constase por modo auténtico según lo dispone el Código Civil. La notificación es el instrumento técnico que sirve para vincular al deudor con el cesionario.

Sin embargo, en el negocio que se llevó a cabo entre Electrical Solutions y Liquid Capital, contrato privado, no se elevó a un documento público, por lo cual sus efectos frente a terceros fueron anulados. Según dispone el

Código Civil en su Artículo 1416: "La cesión de un crédito, derecho o acción no surtirá efecto contra tercero, sino desde que su fecha deba tenerse por cierta en conformidad a los artículos 1172 y 1181 (secs. 3273 y 1181)." De este modo, el Código nos indica que:

"La fecha de un documento privado no se contará respecto de terceros, sino desde el día en que hubiese sido incorporado o inscrito en un registro público, desde la muerte de cualquiera de los que lo firmaron, o desde el día en que se entregase a un funcionario público por razón de su oficio." [6]

A su vez, el documento privado que constituyó el pacto entre Liquid Capital y Electrical Solutions fue otorgado el 5 de octubre de 2006. El mencionado acuerdo señala que será la determinación de Liquid Capital las facturas que habría de adquirir de Electrical Solutions. Para cada grupo de facturas a ser cedidas, Electrical Solutions emitía una notificación a Liquid Capital indicando su procedencia y el total de éstas. A partir de la notificación, Liquid Capital cursaría una aceptación de las facturas que deseaba adquirir. En el caso de las facturas de Alternative Works, no se emitió la aceptación, lo cual impidió el perfeccionamiento del contrato de cesión para con el monto en controversia.

Ante este punto, es importante notar que el presidente de Electrical Solutions pactó con Liquid Capital una vez conocía de la deuda por los trabajos realizados por Alternative Works. De este modo, Electrical Solutions lleva a cabo un contrato en perjuicio del materialista con plena conciencia y mala fe de las repercusiones que tendría para con su acreedor. El condonar este tipo de acción, incidiría en las consideraciones de orden público, moral y de equidad que nuestro ordenamiento ha elaborado en protección de nuestra fuerza laboral.

De esta manera, según lo establece el Código Civil, el dueño de una obra, en tanto en cuanto sea deudor de su contratista, no puede eludir el derecho a manera de refacción o retención. Cuando un contratista cede su crédito contra el dueño de la obra en construcción o construida con anterioridad a la radicación por obreros o abastecedores de materiales de una reclamación contra dicho dueño, lo hace en perjuicio de los obreros o abastecedores de materiales. Aún más, según lo establece la jurisprudencia:

"Radicada por un materialista una acción al amparo de las disposiciones del Art. 1489 del Código Civil contra el dueño de una obra en cobro del importe de materiales suplidos a su contratista, con anterioridad a la cesión a un tercero del crédito del contratista, contra dicho dueño, dicha radicación produce el importantísimo efecto de substraer el importe de lo reclamado por el materialista de las reclamaciones de otros acreedores del contratista, convirtiéndose dicho materialista en acreedor directo del dueño de la obra, no estando sujeto su crédito a los vaivenes de las *responsabilidades del contratista por otros conceptos.*" [7]

Como se desprende de los hechos, la notificación que envió Alternative Works a Maglez, el 14 de diciembre de 2007, tiene el efecto de constar como una reclamación extrajudicial a Maglez de la cantidad retenida por este último, para fines de satisfacer la deuda con Electrical Solutions. Dicha reclamación, por basarse en deudas por concepto de mano de obra y materiales, están protegidas por la política pública que concede un crédito preferente ante toda acción posterior de otros acreedores.

Este hecho es esencial, ya que Liquid Capital argumenta que debido al contrato de refacción, otorgado con prelación a la reclamación de Alternative Works, son ellos los que tienen un derecho preferente a la cantidad consignada. No obstante, al analizar el texto del pacto entre Liquid Capital y Electrical Solutions, vemos que el contrato de cesión no llegó a término, ya que la oferta nunca fue aceptada por el primero. Ante la falta de perfeccionamiento oportuno del contrato de cesión, nos enfrentamos a la ineludible repercusión de que el crédito preferente sobre la cantidad consignada pertenece a Alternative Works. Aún más, el contrato de refacción inicial otorgado por Electrical Solutions no cedió ninguna cuenta por cobrar en específico a Liquid Capital, haciendo más vital que la aceptación de las facturas correspondientes al monto consignado fuese oportuna.

Por tanto, en consideración a que el pacto establecido por Electrical Solutions y Liquid Capital no fue perfeccionado, siendo la política pública de nuestro ordenamiento jurídico la protección de los materialistas de una obra, no le asiste la razón a Liquid Capital en su argumento.

El tercer señalamiento de Liquid Capital, en su alegato suplementario, se circunscribe a que erró instancia al admitir en evidencia cierto testimonio de Alternative Works que constituía prueba de referencia. Hemos examinado la transcripción sometida por Liquid Capital, en unión a las determinaciones de hechos formuladas por instancia, y concluimos que el error no fue cometido.

En mérito de lo cual, confirmamos la **Sentencia** dictada por el Tribunal de Primera Instancia, Sala de Caguas, el 2 de julio de 2008.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2009 DTA 84

**1.** Réplica al alegato suplementario de la parte apelante (Alternative Works), a la pág. 2.

**2.** Escrito de Apelación, Apéndice X, a la pág. 27, Exhíbit I del Juicio, "Corporate Resolution of Electrical Solution Contrator Inc."

**3.** Escrito de Apelación, Apéndice X, a la pág. 42, Exhíbit II del Juicio, "Corporate Resolution of Electrical Solution Contrator Inc."

**4.** Escrito de Apelación, Apéndice XI, a la pág. 44, Exhíbit III del Juicio, Carta fechada 9 de octubre de 2006, párrafo n.2, dirigida a Maglez Construction.

**5.** 31 L.P.R.A. § 3375.

**6.** 31 L.P.R.A § 3282.

**7.** Armstrong, Etc. v. Inter-Amer. Builders, Inc, 98 D.P.R. 734 (1970).