ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| LUNA COMMERCIAL II, LLC<br>Apelada<br><br>v.<br><br>ABSOLUTE COMMUNITY INVESTMENT, INC.; DEWEY UNIVERSITY, INC.; AUCTION & SALVAGE, CORP.<br><br>Apelantes | KLAN202200639 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.<br>BY2020CV00341<br><br>Sobre:<br>Cobro de dinero |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Rodríguez Flores.

Rodríguez Flores, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de marzo de 2023.

Comparecen Absolute Community Investment, Inc., Dewey University, Inc. y Auction & Salvage, Corp., y solicita que revoquemos la *Sentencia* emitida el 4 de abril de 2022, notificada al día siguiente, por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón. En el dictamen impugnado, el TPI acogió la solicitud de sentencia sumaria presentada por la parte apelada, Luna Commercial II, LC y, en consecuencia, ordenó a las comparecientes al pago total de las sumas reclamadas en la demanda por concepto de incumplimiento de contrato.

Evaluado el recurso y su oposición, resolvemos confirmar la determinación judicial impugnada.

I.

El 24 de enero de 2020, Santander Financial Services, Inc. (Santander), presentó demanda en cobro de dinero y ejecución de

prenda e hipoteca en contra de Absolute Community Investments, Inc.; Dewey University Inc.; y Auction & Salvage, Corp.[1] En ésta, Santander expuso que, el 31 de octubre de 2014, la codemandada Absolute Community Investments (Absolute) suscribió un contrato de préstamo, en virtud del cual obtuvo una línea de crédito. Como aval, Absolute y el resto de las codemandadas, como garantizadores solidarios (en conjunto, las demandadas), ofrecieron en prenda varias garantías prendarias hipotecarias. Santander adujo que Absolute incumplió con su obligación de pago y desglosó las cantidades adeudadas a la fecha de la presentación de la demanda. Arguyó que luego de intentos infructuosos para cobrar lo adeudado, declaró líquida, vencida y exigible la deuda. Por tanto, en su demanda, reclamó el pago de la totalidad de lo adeudado o, en su defecto, la ejecución de las garantías.

El 4 de agosto de 2020, las partes presentaron una moción conjunta en la que informaron al TPI que se habían reunido y estaban en conversaciones para alcanzar un posible acuerdo.[2]

No obstante, el 13 de noviembre de 2020, Santander presentó una *Moción Informativa,* en la que señaló que las partes no lograron formalizar un acuerdo transaccional, por lo cual solicitó la continuación de los procedimientos.[3] Simultáneamente, presentó una *Moción de Sentencia Sumaria.* En esencia, fundamentó su solicitud en que no había controversia sustancial en cuanto a que Absolute había incumplido sus obligaciones; que las sumas reclamadas están vencidas, son líquidas y exigibles; que las gestiones de cobro resultaron infructuosas; que la institución bancaria es la tenedora de buena fe del pagaré hipotecario dado en prenda por las deudoras y; finalmente, que éstas adeudan las

---

[1] Véase, *Demanda,* apéndice del recurso, págs. 1-5.
[2] *Íd.*, pág. 10-11.
[3] *Íd.,* pág. 15.

cantidades reclamadas en la demanda.[4] Con su escrito en solicitud de sentencia sumaria, el banco acompañó copia de veintinueve (29) documentos que evidencian la existencia del préstamo, del pagaré, de la garantía hipotecaria y del incumplimiento de las demandadas con las obligaciones prestatarias suscritas.[5]

El TPI ordenó a Absolute expresar su posición en torno a lo solicitado.[6] Sin embargo, poco después, el abogado de Absolute solicitó la renuncia de representación legal.[7] El 13 de enero de 2021, el TPI aceptó la renuncia y concedió término a dicha parte para anunciar una nueva representación legal. A su vez, apercibió a Absolute que, transcurrido el término concedido sin que se hubiera presentado la moción, dispondría sobre la solicitud de sentencia sumaria sin más citarle y oírle.[8]

El 10 de febrero de 2021, Absolute presentó una moción en solicitud de autorización de representación legal y varios remedios. Peticionó que se aceptara la nueva representación legal anunciada y que se le concediera término para realizar el descubrimiento de prueba y presentar su oposición a la solicitud de sentencia sumaria.[9]

También el 10 de febrero de 2021, Absolute presentó su *Contestación a la Demanda.* En resumen, aceptó haber adquirido la deuda, pero negó el balance reclamado y planteó varias defensas afirmativas generales, entre éstas, falta de parte indispensable. También, se reservó el derecho a formular defensas afirmativas

---

[4] *Íd.*, págs. 16-20a.
[5] *Íd.,* págs. 21-40.
[6] *Íd.,* pág. 41.
[7] *Íd.,* págs. 48-49.
[8] *Íd.,* pág. 50.
[9] Además, requirió se le ordenara a Santander informar si era la parte con legitimidad para incoar la demanda, debido al cambio de dueño de las operaciones de Santander desde septiembre de 2020. *Íd.,* págs. 51-55. Al respecto, Santander presentó una *Solicitud de Sustitución de Parte*, en la que informó que la deuda monetaria objeto del pleito había sido vendida a Luna Commercial II, LLC, y adjuntó prueba acreditativa de la transacción. Ante ello, el 28 de octubre de 2021, el TPI notificó la orden mediante la cual autorizó la sustitución de la parte demandante, Santander Financial Services, Inc., por Luna Commercial II LLC. *Íd.,* págs. 94 y 118.

adicionales que surgieran como consecuencia del descubrimiento de prueba e, igualmente, a presentar una reconvención.[10]

El 16 de febrero de 2021, el TPI concedió un término perentorio a Absolute para expresarse sobre la solicitud de sentencia sumaria. Le apercibió que transcurrido el término concedido sin que Absolute se hubiera expresado, el asunto se tendría por sometido para adjudicación.[11] Absolute recurrió de dicha determinación interlocutoria ante este foro apelativo. Mediante Resolución emitida el 19 de marzo de 2021, este Tribunal de Apelaciones denegó la expedición del recurso (KLCE202100296).

Posteriormente, el 16 de abril de 2021, Absolute presentó ante el TPI su *Moción en Oposición a Solicitud de Sentencia Sumaria.* Sostuvo que la solicitud de sentencia sumaria presentada por Santander era prematura, debido a que aún no se había realizado el descubrimiento de prueba. Razonó que el descubrimiento era necesario para validar el balance de la deuda y otros aspectos de la relación deudor-acreedor. Al respecto, aseveró que el documento que Santander anejó a su moción dispositiva - una declaración jurada de una gestora de la Unidad de Recuperaciones del Banco - que indica que las codemandadas incumplieron con los términos de sus obligaciones y establece el balance adeudado - resultaba insuficiente para validar la cuantía de la deuda reclamada.

Por otro lado, Absolute indicó que en ese momento no podía expresarse responsablemente sobre la moción de sentencia sumaria hasta que Santander descubriera los treinta y seis (36) documentos que enumeró en su escrito. En resumen, **Absolute negó el importe reclamado, pero no así la existencia de la obligación y de las garantías constituidas**.[12]

---

[10] *Íd.,* págs. 56-59.
[11] *Íd.,* pág. 63.
[12] *Íd.,* págs. 64-78.

Meses más tarde, el 28 de mayo de 2021, Absolute presentó una moción en la que expuso su interés en ejercer el retracto de la venta del crédito hipotecario en disputa. Informó que Santander había cedido su interés en el préstamo y solicitó que se ordenara al banco anunciar el precio pagado por los pagarés para estar en posición de ejercer su derecho a retracto. Acompaño copia de la notificación de transferencia del préstamo comercial. [13]

En oposición, la institución bancaria expresó que, conforme a lo resuelto en *DLJ Mortgage v. SLG Santiago-Ortiz,* 202 DPR 950 (2019), las disposiciones del Código Civil relacionadas con el retracto de crédito litigioso no aplican a este caso porque la Ley de Transacciones Comerciales (Ley 208-1995) excluye la aplicación de esta figura jurídica sobre las cesiones de instrumentos negociables otorgados a su amparo, como los pagarés del presente caso.[14]

El 12 de octubre de 2021, el TPI notificó la *Resolución* que declaró no ha lugar la moción de Absolute para ejercer el derecho a retracto de crédito litigioso. Expresó el tribunal que, a tenor con lo resuelto en el citado caso, "el retracto de crédito litigioso no es de aplicación al caso de autos, ya que se trata de la cesión o venta de un instrumento negociable".[15]

El 26 de octubre de 2021, Absolute presentó *Moción de Reconsideración.* Allí, por primera vez, cuestionó la constitucionalidad de la Ley de Transacciones Comerciales. Adujo que la mencionada ley menoscaba el precepto constitucional de igual protección de las leyes, al hacer inaplicable la figura civil del crédito litigioso a las transferencias de instrumentos negociables. Añadió que los pagarés fueron suscritos en el 2015, y que el citado caso *DLJ Mortgage,* resuelto el 23 de julio de 2019, no dispuso que

---

[13] *Íd.,* págs. 84-91. La transferencia fue efectiva al 17 de mayo de 2021.
[14] *Íd.,* pág. 92.
[15] *Íd.,* pág. 93.

la norma allí establecida fuera una de carácter retroactivo.[16]  En igual fecha, Absolute presentó, además, una *Moción en Solicitud de Autorización para Enmendar Contestación a Demanda y Presentar Demanda contra Tercero.* En síntesis, ante su planteamiento de inconstitucionalidad del estatuto, pidió que se le permitiera exponer sus defensas de forma adecuada y que se incluyera al Estado Libre Asociado de Puerto Rico como parte indispensable del pleito.[17]  A la par, presentó el documento de *Contestación a la Demanda Enmendada y Demanda contra Tercero.[18]*

El 28 de octubre de 2021, el TPI declaró *no ha lugar* la solicitud de reconsideración.[19]  Luego, mediante *Resolución* notificada el 4 de noviembre de 2021, el TPI aceptó la contestación a la demanda enmendada de Absolute. En cambio, denegó la solicitud de dicha parte para originar una demanda de tercero en contra del Estado Libre Asociado de Puerto Rico.[20]  Absolute solicitó reconsideración de la denegatoria a presentar demanda contra tercero.[21] El TPI declaró *no ha lugar* la solicitud.[22]

Finalmente, evaluada la moción de sentencia sumaria, la oposición de Absolute, así como la prueba documental adjunta, el 4 de abril de 2022, notificada el 5 de abril de 2022, el TPI emitió *Sentencia*[23], en la que determinó probados los siguientes hechos:

> 1. El 31 de octubre de 2014, la codemandada Absolute Community Investments, Inc. suscribió un Contrato de Préstamo en virtud del cual obtuvo de Banco Santander Puerto Rico una Línea de Crédito No Rotativa por la suma principal agregada de **$4,400,000.00**, convertible eventualmente a un Préstamo a Término por el margen de crédito utilizado. Los fondos desembolsados, según pactado, inicialmente devengarían intereses fluctuantes a razón de **4%** sobre la Tasa Libor (en adelante, "la Facilidad de Crédito").

---

[16] *Íd.,* págs. 95-97.
[17] *Íd.,* págs. 100-103.
[18] *Íd.,* págs. 104-116.
[19] *Íd.,* pág. 119.
[20] *Íd.,* pág. 130.
[21] *Íd.,* págs. 131-135.
[22] *Íd.,* pág. 136.
[23] *Íd.,* págs. 138-145.

2. Acto seguido, como evidencia de la deuda para con Banco Santander Puerto Rico a tenor la mencionada Facilidad de Crédito, el 31 de octubre de 2014 la codemandada Absolute Community Investments, Inc. suscribió un Pagaré por la suma principal agregada de **$4,400,000.00**, el cual devengaría intereses a razón de lo pactado en el Contrato de Préstamo de igual fecha.

3. Como colateral para asegurar el pago y cumplimiento puntual de sus obligaciones para con Banco Santander Puerto Rico, las demandadas ofrecieron las siguientes garantías:

a) Gravamen prendario sobre Pagaré Hipotecario por la suma principal de **$2,700,000.00** a favor del Portador, con intereses a razón del 7.95% anual fijo y vencimiento a la presentación, garantizado mediante hipoteca constituida en virtud de la Escritura #17, otorgada en San Juan, Puerto Rico el día 4 de febrero de 2004, ante el Notario Público Manuel L. Correa Márquez, sobre una propiedad perteneciente a Auction & Salvage, Corp., la cual consta inscrita al Folio #1 del Tomo #13 de Bayamón Norte, Registro de la Propiedad de Puerto Rico, Sección Tercera (III) de Bayamón, Finca #368.

b) Gravamen prendario sobre Pagaré Hipotecario por la suma principal de **$500,000.00** a favor del Portador, con intereses a razón del 6.85% anual fijo y vencimiento a la presentación, garantizado mediante hipoteca constituida en virtud de la Escritura #19, otorgada en San Juan, Puerto Rico el día 8 de abril de 2009, ante el Notario Público Manuel L. Correa Márquez, sobre una propiedad perteneciente a Auction & Salvage, Corp., la cual consta inscrita al Folio #1 del Tomo #13 de Bayamón Norte, Registro de la Propiedad de Puerto Rico, Sección Tercera (III) de Bayamón, Finca #368.

c) Gravamen prendario sobre Pagaré Hipotecario por la suma principal de **$1,200,000.00** a favor del Portador, con intereses a razón de 4% sobre la Tasa Lib[or] y vencimiento a la presentación, garantizado mediante hipoteca constituida en virtud de la Escritura #33, otorgada en San Juan, Puerto Rico el día 29 de septiembre de 2014, ante el Notario Público Manuel L. Correa Márquez, sobre una propiedad perteneciente a Auction & Salvage, Corp., la cual consta inscrita al Folio #1 del Tomo #13 de Bayamón Norte, Registro de la Propiedad de Puerto Rico, Sección Tercera (III) de Bayamón, Finca #368.

d) Cesión General de Rentas en relación con la propiedad inmueble ofrecida en garantía.

e) Garantía solidaria de la codemandada Dewey University Inc.

4. Las garantías prendarias hipotecarias anteriormente aludidas en el párrafo número 3 anterior gravan la siguiente propiedad inmueble:

---**RÚSTICA:** Parcela de terreno radicada en el Barrio Hato Tejas de Bayamón, Puerto Rico, con una cabida

superficial de 22,648.34 metros cuadrados. En lindes por el **NORTE**, con el Rio Hondo y Domingo Luiña; por el **SUR**, con Carretera número 2; por el **ESTE**, con Manuel G. Goldini; y por el **OESTE**, con Bayamón Fruit Growers Association, Domingo Luiña, separados por el Río Hondo.

---Contiene un edificio de vivienda de una planta y otro edificio para uso industrial de 126 pies de largo por 146 pies de fondo, con un área de 130,917.00 pies cuadrados, un edificio o planta para envase y una casa de zinc para maquinaria.

---La parcela antes descrita es el remanente de esta finca luego de deducida una segregación de 0.777 cuerdas. -------------------------------------------------------

---Consta inscrita al Folio Uno (1) del Tomo Trece (13) de Bayamón Norte, Registro de la Propiedad de Puerto Rico, Sección Tercera (III) de Bayamón, Finca Número Trescientos Sesenta y Ocho (368).

5. En fecha posterior, el 3 de agosto de 2016, la codemandada Absolute Community Investments, Inc. suscribió un Contrato de Préstamo en virtud del cual obtuvo de Banco Santander Puerto Rico la conversión del margen de crédito utilizado de la Facilidad de Crédito a un Préstamo a Término, a saber, por la suma principal de **$2,922,229.24** (en adelante, "el Préstamo"). El Préstamo, según pactado, devengaría intereses a razón del **6.98%** anual fijo.

6. Para dicha conversión de la Facilidad de Crédito al Préstamo, las demandadas ratificaron y consintieron las garantías originalmente constituidas el 31 de octubre de 2014 e identificadas en los párrafos números 3 y 4 anteriores.

7. Acto seguido, como evidencia de la deuda para con Banco Santander Puerto Rico a tenor con el mencionado Préstamo, el 3 de agosto de 2016 la codemandada Absolute Community Investments, Inc. suscribió un Pagaré por la suma principal de **$2,922,229.24**, el cual devengaría intereses a razón de lo pactado en el Contrato de Préstamo de igual fecha.

8. El 29 de diciembre de 2017, a solicitud de Absolute Community Investments, Inc., se suscribió una Enmienda al Contrato de Préstamo en virtud del cual Banco Santander Puerto Rico le concedió una moratoria en el pago del Préstamo para los meses de agosto, septiembre, octubre, noviembre y diciembre de 2017, reducir la tasa de interés aplicable al **4%** anual fijo y extender la fecha de vencimiento.

9. Para dicha enmienda al Préstamo, las demandadas nuevamente ratificaron y consintieron las garantías originalmente constituidas el 31 de octubre de 2014 e identificadas en los párrafos números 3 y 4 anteriores, ya ratificadas y consentidas el 3 de agosto de 2016.

10. La demandante es hoy la acreedora del Préstamo, siendo además la tenedora de buena fe y poseedora mediante endoso y/o por causa onerosa de los Pagarés

Hipotecarios dado en prenda por las demandadas en garantía de las sumas de dinero reclamadas.

11. Las Deudoras han incurrido en incumplimiento de sus obligaciones contractuales para con la demandante, quien entonces ha acelerado el vencimiento total del Préstamo, según pactado, adeudándose solidariamente por las Deudoras a la demandante al 15 de julio de 2020 la suma principal de **$2,789,102.26**, más la cantidad de **$88,639.74** por concepto de intereses acumulados a dicha fecha y los cuales continúan acumulándose mensualmente a razón de la tasa de interés pactada, más la cantidad de **$920,000.00** estipulada para costas, gastos y honorarios de abogado, más **$6,013.68** por concepto de cargos por demoras acumulados, más los recargos y gastos que se acumulen hasta la fecha de su total y completo pago.

12. Las sumas reclamadas por la demandante a las Deudoras están vencidas, son líquidas y exigibles.

13. La demandante ha realizado gestiones de cobro a las Deudoras, resultando éstas infructuosas.

14. Al día de hoy las Deudoras no han pagado la deuda para con la demandante.

15. Por el incumplimiento contractual de las demandadas, la demandante ha optado por proceder, entre otras, a la ejecución de la prenda y/o de las hipotecas bajo el caso de epígrafe, para con el producto de la venta de las propiedades mueble e inmueble que la garantizan, se le pague hasta donde sea posible su acreencia y de haber deficiencia, ejecutando otros bienes de las Deudoras en cantidad suficiente para cubrir el balance insoluto de la sentencia.

(Énfasis original. Notas al calce omitidas).

A la luz de tales determinaciones, el TPI concluyó que no existía controversia en cuanto al incumplimiento de las deudoras con las obligaciones pactadas y la cuantía reclamada. De tal forma, declaró *ha lugar* la solicitud de sentencia sumaria presentada por la parte demandante, ahora Luna Commercial II, LLC (Luna Commercial).[24] Por tanto, ordenó a las deudoras demandadas a pagar solidariamente a Luna Commercial la suma principal de $2,789,102.26, más la cantidad de $88,639.74 por concepto de

---

[24] El 18 de octubre de 2021, Santander presentó una *Solicitud de Sustitución de Parte*, en la que informó que la deuda monetaria del presente pleito fue vendida a Luna Commercial II, LLC. El TPI emitió orden el 27 de octubre de 2021, notificada el 28 de octubre de 2021, en la que autorizó la sustitución de Santander Financial Services, Inc. por **Luna Commercial II LLC**. (Véase, Apéndice del recurso, págs. 94 y 118).

intereses acumulados a dicha fecha y los cuales continúan acumulándose mensualmente a razón de la tasa de interés pactada; la cantidad de $920,000.00 estipulada para costas, gastos y honorarios de abogado; el importe de $6,013.68 por concepto de cargos por demoras acumulados, más los recargos y gastos que se acumulen hasta la fecha de su total y completo pago; o, en su defecto, ordenó la ejecución de la prenda e hipoteca relacionada en la sentencia.

El 20 de abril de 2022, Absolute presentó *Moción en Solicitud de Reconsideración sobre Sentencia.* Reiteró sus argumentos referentes a la constitucionalidad de la Ley de Transacciones Comerciales y la necesidad de traer al Estado como parte indispensable del pleito. Específicamente, hizo referencia al voto disidente suscrito por la Jueza presidenta Oronoz Rodríguez en el caso *Condado 3 v. González López y otros,* 204 DPR 86 (2020), resuelto mediante *Resolución* que denegó expedir el auto de *certiorari.*[25]

Luna Commercial presentó su *Oposición a la Moción de Reconsideración.* Arguyó que el TPI ya había rechazado el planteamiento de inconstitucionalidad de la Ley de Transacciones Comerciales en la *Resolución* notificada el 4 de noviembre de 2021.[26]

Absolute presentó una *Moción Suplementaria en torno a Solicitud de Reconsideración.* Como argumento adicional para sustentar su planteamiento de inconstitucionalidad de la Ley de Transacciones Comerciales, informó que, pendiente el pleito de epígrafe, se había aprobado la Resolución Concurrente del Senado Núm. 24 (R. Con. del S. 24), mediante la cual dicho cuerpo legislativo expresamente objetó lo resuelto por el Tribunal Supremo en el caso de *DLJ Mortgage* y "[r]eafirm[ó] de forma clara e inequívoca que el

---

[25] *Íd.*, págs. 146-155.
[26] *Íd.*, págs. 156-157.

derecho de toda persona natural y jurídica a ejercer el derecho a retracto de crédito litigioso en los casos de ejecuciones hipotecarias residenciales y comerciales nunca ha estado supeditado a ninguna otra ley vigente desde que se adoptó el Código Civil de Puerto Rico de 1930 y tampoco lo está luego de la aprobación de la Ley 55-2020, según enmendada, conocida como "Código Civil de Puerto Rico".[27]

Examinados los escritos de las partes, el 13 de julio de 2022, el TPI emitió y notificó la *Resolución* mediante la cual denegó la moción de reconsideración presentada por Absolute.[28]

Insatisfecha, el 12 de agosto de 2022, Absolute acudió ante este foro intermedio y señaló la comisión de los siguientes errores:

> Erró el TPI al declarar con lugar la demanda sin dar paso al derecho de las partes demandadas-apelantes a ejercer su derecho al retracto de crédito litigioso ni tomar en cuenta el planteamiento de inconstitucionalidad de la Ley de Transacciones Comerciales, la cual prohíbe dicho ejercicio, conforme con la interpretación del caso *DLJ Mortgage v. SLG Santiago-Ortiz*, 202 DPR 950 (2019).
>
> Erró el TPI [al] no dar paso al argumento de inconstitucionalidad y no ordenar la inclusión del Estado como parte indispensable del pleito.
>
> Erró el TPI al no reconsiderar la sentencia dictada ya que como ha expresado la Asamblea Legislativa recientemente, en nuestro ordenamiento jurídico la figura del derecho a retracto de crédito litigioso nunca ha sido negado por nuestros legisladores a aquellos cuyas deudas están garantizadas con pagarés hipotecarios.

En su recurso, Absolute, en esencia, reproduce los argumentos expuestos ante el foro primario.

Por su parte, en el *Alegato en Oposición*, presentado el 12 de septiembre de 2022, Luna Commercial arguyó que los primeros dos señalamientos de error fueron adjudicados por este Tribunal de Apelaciones en un caso relacionado con el que nos ocupa, *Luna Commercial II LLC v. New Beginning Realty Corp; Dewey University*

---

[27] Íd., págs. 158-164.
[28] *Íd.*, pág. 165.

*Inc.,* KLAN202200120 (resuelto el 19 de abril de 2022)[29]. Respecto al tercer señalamiento de error, Luna Comercial indicó que, toda vez que las resoluciones concurrentes carecen de fuerza de ley, la Resolución Concurrente del Senado 24 no puede utilizarse como fundamento para dejar sin efecto la decisión del Tribunal Supremo en *DLJ Mortgage.*

II.

-A-

El mecanismo de sentencia sumaria, regulado por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, permite al tribunal disponer de un caso sin celebrar vista en su fondo, cuando solo resta aplicar el derecho a los hechos incontrovertidos.[30] El Tribunal podrá dictar sentencia sumaria solamente cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y que, como cuestión de derecho, proceda dictarse sentencia sumaria a favor de la parte promovente. 32 LPRA Ap. V, R. 36.3(e).[31]

La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes.[32] Un hecho material es todo aquel que puede afectar el

---

[29] En el citado caso KLAN202200120, este foro apelativo expresó que:

Como foro revisor, no entraremos a analizar si la Sección 9 de la Ley de Transacciones Comerciales es inconstitucional. El Tribunal Supremo de Puerto Rico ya adjudicó, mediante el caso *DLJ Mortgage Capital, Inc. v. David Santiago Martínez, supra*, la controversia traída ante nuestra consideración por las apelantes, por lo que carece de méritos su señalamiento sobre la inconstitucionalidad de la sección de la ley que interesan impugnar. Como foro intermedio estamos obligados a acatar los precedentes que pauta el Tribunal Supremo como foro de última instancia. En el caso ante nuestra consideración no existe una situación fáctica distinguible de la acontecida en *DLJ Mortgage Capital, Inc. v. David Santiago Martínez, supra*, que justifique apartarnos del precedente allí establecido.

[30] *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018); *Abrams Rivera v. E.L.A.,* 178 DPR 914, 932 (2010); *Nieves Díaz v. González Massas,* 178 DPR 820, 847 (2010); *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).

[31] *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013); *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión,* supra, pág. 214; *González Aristud v. Hosp. Pavía,* 168 DPR 127, 137-138 (2006).

[32] *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018).

resultado de la reclamación, de acuerdo con el derecho sustantivo aplicable. La controversia sobre el hecho material tiene que ser real. Así que, cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria. Esto es, la duda debe ser de tal naturaleza que se pueda colegir la existencia de una controversia real y sustancial sobre hechos esenciales y pertinentes a la controversia planteada en la solicitud de sentencia sumaria.[33]

Le corresponde a la parte que promueve la moción de sentencia sumaria establecer su derecho con claridad y demostrar que no existe controversia sustancial o real en cuanto a algún hecho material.[34] Dicha parte está obligada a desglosar los hechos sobre los que aduce no existe controversia y, para cada uno, especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.[35]

Por otro lado, la parte promovida tiene el deber de refutar los hechos alegados, con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria.[36] A tales efectos, la parte que se opone tiene el deber de hacer referencia a los párrafos enumerados por la parte promovente que entiende que están en controversia y para cada uno detallar la evidencia admisible que sostiene su impugnación.[37] No podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que deberá contestar de manera detallada y específica, como lo hiciera la parte solicitante.[38]

Si el oponente no controvierte los hechos propuestos de la forma exigida por la Regla 36.3 de Procedimiento Civil, se podrán

---

[33] *Bobé v. UBS Financial Services,* 198 DPR 6, 20 (2017).
[34] *Íd.*
[35] *Roldán Flores v. M. Cuebas et al.,* supra, pág. 676.
[36] *León Torres v. Rivera Lebrón,* supra, pág. 44; *Ramos Pérez v. Univisión,* supra, pág. 215; *Toro Avilés v. P.R. Telephone Co.,* 177 DPR 369, 383-384 (2009).
[37] *Roldán Flores v. M. Cuebas et al.,* supra, págs. 676-677.
[38] *Bobé v. UBS Financial Services,* supra, pág. 21.

considerar admitidos y se dictará sentencia sumaria en su contra, si procede.[39]

En *Meléndez González, et al. v. M. Cuebas[40],* el Tribunal Supremo estableció el estándar específico, que, como foro apelativo, debemos utilizar. A tales efectos, indicó que, de entrada, debemos examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil y la jurisprudencia exigen al foro primario. Además, debemos revisar que tanto la moción de sentencia sumaria, así como su oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil.[41] Igualmente, hay que revisar si existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil de exponer concretamente cuáles hechos materiales están en controversia y cuáles están incontrovertidos.[42] Por el contrario, si encontramos que los hechos materiales del caso realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente la norma jurídica aplicable a la controversia que tuvo ante sí.[43]

-B-

El Art. 1042 del Código Civil de Puerto Rico de 1930 (Código Civil), derogado[44], enumera las fuentes de las obligaciones reconocidas por nuestro ordenamiento jurídico. Así, el referido artículo dispone que "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia".[45]

---

[39] *Roldán Flores v. M. Cuebas et al.,* supra, pág. 677.
[40] 193 DPR 100 (2015).
[41] *Íd.,* pág. 118.
[42] *Íd.,* pág. 119.
[43] *Íd.*; *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.
[44] 31 LPRA sec. 2992. El referido Código Civil de Puerto Rico de 1930 fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020, según enmendada, 31 LPRA sec. 5311 *et seq.* Para fines de la presente controversia, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia ante nuestra consideración.
[45] *Íd.*

En particular, sobre las obligaciones de naturaleza contractual, el Art. 1044 del Código Civil dispone que, "las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos".[46] Por ende, un contrato existe desde que una o varias personas prestan su consentimiento a obligarse a dar alguna cosa o prestar algún servicio. [47] Conforme al contrato de préstamo, el deudor viene obligado a pagar el capital adeudado al acreedor, más los intereses devengados al tipo convenido.[48]

Cónsono con lo anterior, en *General Electric v. Concessionaires, Inc.*[49], el Tribunal Supremo indicó que, en acciones de cobro de dinero, el demandante solo tiene que probar que existe una deuda válida, que no se ha pagado, que él es el acreedor y los demandados sus deudores. Por lo tanto, cuando se presenta una demanda sobre cobro de dinero, la parte promovente debe alegar que la deuda reclamada es una líquida, vencida y exigible.*[50]* Ello se debe a que únicamente pueden reclamarse por la vía judicial aquellas deudas que hayan advenido líquidas, vencidas y exigibles.[51] Una deuda se considera que es líquida cuando la cuantía adeudada es cierta y determinada.[52]

-C-

En Puerto Rico, la Ley Núm. 208-1995, según enmendada, conocida como la Ley de Transacciones Comerciales (Ley de Transacciones Comerciales)[53] es una legislación especial, que reglamenta, entre otros, los instrumentos negociables. La referida ley define el término instrumento negociable como "una promesa o

---

[46] 31 LPRA sec. 1994.
[47] 31 LPRA sec. 3371; *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448, 455 (2014).
[48] Arts. 1644-1646 del Código Civil, 31 LPRA secs. 4571-4573.
[49] 118 DPR 32, 43 (1986).
[50] *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001).
[51] *Íd.*
[52] *Íd.*
[53] 19 LPRA sec. 401 *et seq.*

una orden incondicional de pago de una cantidad específica de dinero, […], si el mismo: [entre otros] (1) es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor".[54] La negociabilidad es la característica medular de los instrumentos negociables y la fuente de su importancia para nuestras relaciones económicas.[55] Entre los instrumentos negociable más utilizados en el comercio destacan los cheques, los giros, las letras de cambio y los pagarés.[56]

La Ley de Transacciones Comerciales se aprobó para simplificar, clarificar y modernizar el derecho que rige las transacciones comerciales, uniformar el derecho entre las diversas jurisdicciones existentes y permitir la continua expansión de las prácticas comerciales. Con ello, Puerto Rico se adaptó a la celeridad del tráfico y a las tendencias modernas en aspectos de transacciones bancarias y comerciales.[57]

En específico, en *DLJ Mortgage v. SLG Santiago- Ortiz*[58] el Tribunal Supremo resolvió que la venta o transmisión de los pagarés hipotecarios constituye una transacción al amparo del Capítulo 9 de la Ley de Transacciones Comerciales. Expresó además que las disposiciones del Código Civil relacionadas a la cesión[59] de créditos no son aplicables a transacciones que estén bajo el alcance de la Ley de Transacciones Comerciales. Esto se debe a que, en la Ley de Transacciones Comerciales, la Asamblea Legislativa puntualizó que, a menos que sean desplazados por disposiciones particulares de la misma ley, los principios generales del derecho en esta jurisdicción aplicarán de forma supletoria. Por consiguiente, aun cuando las

---

[54] Sec. 2-104(a)(1) de la Ley de Transacciones Comerciales, 19 LPRA sec. 504(a)(1).
[55] *Des Caribe v. Ven-Lour Enterprises,* 198 DPR 290, 298 (2017).
[56] *COSSEC et al. v. González López et al.*, 179 DPR 793, 799 (2010).
[57] 19 LPRA sec. 401.
[58] 202 DPR 950 (2019).
[59] Mediante el contrato de cesión, un tercero, el cesionario, sustituye al acreedor cedente y se convierte en el titular activo de la obligación existente a partir de la transmisión del crédito. *IBEC* v. *Banco Comercial*, 117 DPR 371, 376 (1986). Pese a la transmisión, la obligación o relación jurídica ya existente permanece inalterada.

disposiciones del Código Civil pudieran aplicar a una controversia particular que también esté regulada por la Ley de Transacciones Comerciales, el Código Civil solo aplicará de manera supletoria.[60]

III.

De acuerdo con la doctrina discutida, como primer paso en nuestro análisis, nos corresponde evaluar si la moción de sentencia sumaria de Luna Commercial y la oposición de Absolute cumplieron con los requisitos de forma establecidos en la Regla 36 de Procedimiento Civil.

Luna Commercial cumplió con la exposición de hechos esenciales e incontrovertidos, debidamente enumerados, así como con los documentos que unió a su petición en apoyo a su propuesta. Anejó la declaración jurada de una gestora de la Unidad de Recuperaciones del Banco Santander que estableció el balance adeudado, las resoluciones corporativas de cada una de las demandadas que autorizan la línea de crédito y las garantías prendarias hipotecarias cuyo pago se reclama, los contratos de préstamo y prenda, escrituras y pagarés correspondientes.

En cambio, Absolute no cumplió con su parte. Aunque en su oposición negó la mayoría de los hechos propuestos por Luna Commercial, no presentó documentos para controvertir los hechos propuestos en la moción de sentencia sumaria. Solamente alegó que la sentencia sumaria era prematura porque existía controversia sobre la suma reclamada y el descubrimiento de prueba estaba comenzando. En apoyo, anejó la declaración jurada suscrita por Carlos Quiñones Alfonso, presidente de las tres corporaciones demandadas y signatario del contrato de préstamo y todas las garantías, en la que éste señaló la necesidad de que se descubriera la prueba especificada en el documento para poder defenderse de las alegaciones. Con lo anterior, Absolute no refutó ninguno de los

---

[60] *Íd.,* pág. 967; 19 LPRA sec. 402.

hechos debidamente sustentados en la moción de sentencia sumaria. Por tanto, conforme con la Regla 36.3 de Procedimiento Civil, dichos hechos deben darse por admitidos.

A tenor con lo anterior, y como segundo paso en nuestro análisis, corresponde revisar si existen hechos materiales en controversia y, de haberlos, exponer concretamente cuáles están en controversia y cuáles se encuentran incontrovertidos.

Según la evidencia sometida por Luna Commercial, la cual no fue controvertida por Absolute, se desprende la existencia de la deuda contraída por ésta y las garantías prendarias hipotecarias suscritas por las demandadas. Tampoco existe controversia en cuanto a quién es el tenedor y dueño de los pagarés. Luna Commercial presentó prueba documental para sustentar todos los hechos esenciales del caso. Así, probó que no existía controversia sobre el incumplimiento de Absolute y la existencia de una deuda líquida, vencida y exigible por las sumas reclamadas.

Así pues, en atención a que Absolute no demostró que existiera una controversia en cuanto a los hechos del presente caso, y a que los hechos incontrovertidos esbozados por el TPI están apoyados en la prueba que obra en el expediente, corresponde entonces revisar de *novo* si el TPI aplicó correctamente el derecho en este caso.

En su oposición a la solicitud de sentencia sumaria, Absolute admitió haber suscrito el contrato de préstamo, su incumplimiento y la existencia de la deuda. Sin embargo, alegó que existía controversia respecto al monto o importe de la deuda reclamada, pero no presentó evidencia para controvertir los documentos y garantías que evidencian la cuantía adeudada. Solamente adujo que la moción de sentencia sumaria se presentó en una etapa temprana del descubrimiento de prueba y todavía no habían podido descubrir evidencia sobre la cantidad adeudada.

Una vez establecido y admitido el incumplimiento de Absolute, le correspondía a ésta controvertir la cuantía o importe adeudado en su oposición a la moción de sentencia sumaria, pero no lo hizo. Tampoco suplementó dicha oposición una vez entendió que surgió su derecho a ejercer el retracto del crédito litigioso. Lo anterior, a pesar de que, conforme surge del trámite procesal del recurso, tuvo la oportunidad de así hacerlo.

En su lugar, en su solicitud de reconsideración a la denegatoria a ejercer el derecho al retracto de crédito litigioso, cuestionó la constitucionalidad de la Ley de Transacciones Comerciales y solicitó que se incluyera al Estado como parte indispensable del pleito.

Conforme al citado caso de *DLJ Mortgage,* el TPI no incidió al declarar *no ha lugar* la moción de Absolute para ejercer el derecho a retracto de crédito litigioso. En *DLJ Mortgage,* el Tribunal Supremo claramente resolvió que la figura de retracto de crédito litigioso no aplica sobre cesiones de instrumentos negociables al amparo de la Ley de Transacciones Comerciales.

Absolute aduce como defecto constitucional de la Ley de Transacciones Comerciales que ésta crea una distinción entre deudores ordinarios y deudores hipotecarios, al hacer inaplicable el derecho a ejercer el retracto de un crédito litigioso sobre la venta o cesión de pagarés en cuanto a los segundos versus los deudores de otro tipo de deudas. Tal planteamiento no es suficiente para desafiar la validez del estatuto y mucho menos para derrotar la presunción de constitucionalidad que favorece toda legislación. Mas aun cuando en materia de interpretación constitucional rige una clara y política de autolimitación judicial.[61] Recuérdese que la Ley de Transacciones Comerciales se aprobó para simplificar, clarificar y modernizar el derecho que rige las transacciones comerciales, uniformar el

---

[61] *Brau, Linares v. ELA et als.,* 190 DPR 315, 338 (2014).

derecho entre las diversas jurisdicciones existentes y permitir la continua expansión de las prácticas comerciales.[62] Además, en *DLJ Mortgage* el Tribunal Supremo armonizó y validó las disposiciones de la Ley de Transacciones Comerciales, del Código Civil y la Ley del Registro Inmobiliario, al interpretar y adjudicar la misma controversia que hoy Absolute trae ante nuestra consideración. Estamos obligados a acatar dicha norma al amparo de la doctrina del precedente, mientras tal sea el estado de derecho. Por consiguiente, carece de méritos el señalamiento sobre la inconstitucionalidad de la Ley de Transacciones Comerciales, por lo que, a su vez, resulta innecesario discutir si el Estado era o no parte indispensable para atender el referido reclamo.

Además, en cuanto Absolute hace alusión al voto disidente suscrito por la Jueza presidenta Oronoz Rodríguez a la *Resolución* que denegó expedir el auto de *certiorari* en el caso *Condado 3 v. González López y otros,* 204 DPR 86 (2020), puntualizamos que el Tribunal Supremo reiteradamente ha expresado que se establece una norma mediante un dictamen sostenido por una opinión firmada o una opinión *per curiam*.[63] Lo argumentado en un voto disidente no forma parte de la doctrina establecida por dicho Foro.

Por otro lado, las resoluciones concurrentes - como lo es la R. Con del S. 24, a la que también Absolute alude para sustentar su postura - son parte del proceso legislativo diseñado para recoger la voluntad de las cámaras legislativas. Éstas no tienen fuerza de ley y tampoco crean normas de aplicación general. *P.I.P. v. E.L.A., et al.,* 186 DPR 1, 31 (2012), citando a C. I. Gorrín Peralta, *Fuentes y Proceso de Investigación Jurídica,* Ed. Equity Publishing Co., New Hampshire, 1991, págs. 296-297.[64]

---

[62] Nota 57, *supra.*

[63] *Delgado, Ex parte,* 165 DPR 170, 182 (2005).

[64] Distinto es el caso de las resoluciones conjuntas, que siguen un trámite idéntico al de un proyecto de ley, Sec. 18 del Art. III de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo I, tienen fuerza de ley y obligan tanto a la ciudadanía como al Estado en su cumplimiento. La única diferencia entre una

En fin, Luna Commercial presentó una solicitud de sentencia sumaria fundamentada en evidencia que demostró la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. Igualmente, demostró que el derecho aplicable justificaba la concesión del remedio solicitado. Si bien Absolute cuestiona la resolución sumaria del caso, ésta no ofreció prueba que apoye su oposición al dictamen emitido.

Por ende, luego de revisar detenidamente los escritos presentados por las partes ante el TPI, así como los anejos que los acompañan, en ausencia total de hechos materiales y esenciales en controversia, y a tenor con el derecho aplicable, resultaba procedente, como cuestión de derecho, que el TPI dictara la *Sentencia* objeto de este recurso. Así pues, no erró el TPI al acoger la *Moción de Sentencia Sumaria* instada por Luna Commercial, declarar con lugar la demanda y condenar a la parte demandada al pago de las sumas adeudadas.

IV.

Por los fundamentos expuestos, confirmamos la *Sentencia* apelada.

Notifíquese.

Lo acordó y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

ley y una resolución conjunta es que esta última es de carácter transitorio y pierde su fuerza al realizarse la obra o cumplirse la finalidad que persigue. *Noriega v. Hernandez Colón,* 135 DPR 406, 416 (nota 3).