UNITED STATES CASUALTY COMPANY, demandante y recurrida, *v.* PORTO RICAN AND AMERICAN INSURANCE COMPANY, demandada y recurrente.

*Número:* O-69-118 *Resuelto:* 6 de febrero de 1970

---

*Martínez-Muñoz, Agrait-Oliveras & Otero,* abogados de la peti-cionaria-recurrente; *Roberto De La Torre,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

La United States Casualty Co., como subrogada de la Universal C.I.T. Credit Corporation, incoó una demanda contra la Porto Rican and American Insurance Co. en recla-mación de la suma de $1,667.92 que había satisfecho en 18 de agosto de 1966 a la subrogante por los daños causados a un automóvil Ford que Esteban Torres había adquirido mediante venta condicional de la Southern Auto Sales Corp.

La compañía demandada era la aseguradora del dueño del camión causante del accidente.

Con motivo de dicho accidente Torres había demandado a la Porto Rican and American Insurance Co., pleito que terminó mediante sentencia por transacción de 21 de octubre de 1966 resarciéndole la suma de $2,400,([1]) por lo cual suscribió un documento de exoneración y relevo de ulterior responsabilidad a favor de dicha aseguradora. Antes de dictarse dicha sentencia Torres había suscrito una cesión de derechos y acciones a favor de la Universal C.I.T. Credit Corporation que en su parte pertinente lee:

"Yo, EL COMPRADOR arriba nombrado [Torres], por el presente documento hago constar que habiendo el vendedor antes dicho [Southern Auto Sales Corp.] endosado el contrato de venta condicional sobre el vehículo de motor arriba referido a Universal C.I.T. Credit Corporation, y no pudiendo yo como comprador satisfacer el remanente o cantidad adeudada en la suma arriba indicada [$2,073.28],([2]) ahora cedo y traspaso a Universal C.I.T. Credit Corporation todos los derechos y acciones que a virtud del ameritado contrato de venta condicional tengo sobre el descrito vehículo de motor, sin reserva o limitación alguna; y por la presente autorizo a Universal C.I.T. Credit Corporation para que venda el mismo en la forma y manera que estime conveniente, y sin necesidad de tener que recurrir a procedimientos sobre reposesión o venta en pública subasta."

Esta cesión no fue notificada a la Porto Rican and American Insurance Co.

■ La póliza bajo la cual la United States Casualty Co. verificó el pago de los $1,667.92 a la Universal C.I.T. Credit Corporation era de las denominadas de riesgos combinados

---

([1]) En el accidente Torres recibió lesiones personales y su vehículo tuvo daños de consideración que fueron estimados en $818.61.

([2]) El balance adeudado en virtud del contrato de venta condicional era de $2,073.28. A esta suma se acreditaron $105.36 de gastos de financiamiento no devengados y $300 del importe de la venta de los escombros del auto. Por eso el pago de la demandante a la cesionaria fue únicamente de $1,667.92.

de automóviles, figurando esta última como beneficiaria en un endoso para resarcirle según se determinare su derecho (*as interest appears*) al momento de la ocurrencia de la pérdida. [3]

Tanto el Tribunal de Distrito como el Tribunal Superior sostuvieron que habiendo tenido lugar la cesión transcrita con anterioridad al 21 de octubre de 1966, el pago hecho en dicha fecha por la demandada a Torres en satisfacción de sentencia no la liberaba de resarcir a la demandante, irrespectivamente de que hubiese tenido o no conocimiento de la cesión efectuada. Acordamos revisar.

■ (i) Una lectura cuidadosa del documento de cesión es suficiente para revelar que en la misma sólo se intentó transferir cualquier derecho dominical que como comprador condicional correspondiera a Torres en el vehículo averiado. Véanse, el Art. 6 de la Ley de Ventas Condicionales, 10 L.P.R.A. sec. 36; *Vélez Cuebas* v. *Cancel*, 88 D.P.R. 220 (1963); y en general, Litvinoff, *Las Ventas a Plazos en el Derecho Puertorriqueño*. Más bien se trataba de facilitar la disposición de los escombros del vehículo (*salvage*) dispensándose recurrir al procedimiento de reposesión marcado en la Ley de Ventas Condicionales. De ahí la referencia expresa a la imposibilidad del comprador de satisfacer el remanente de la suma adeudada bajo el contrato de venta condicional. En forma alguna puede entenderse que esta cesión incluía la causa de acción que correspondía al com-

---

[3] Este endoso se conoce también en seguros como *single interest*. En esencia, el endosatario—acreedor hipotecario o prendatario, cesionario, etc.—tiene derecho a que se le satisfaga hasta el balance insoluto de su crédito; cualquier remanente corresponde al cedente. Couch, *On Insurance* 2d, § 29:66; Appleman, *Insurance Law and Practice*, § 335. Véanse, *American Insurance Co.* v. *First Savings & Loan Ass'n*, 434 S.W.2d 170 (Texas 1968); *World Investment Co.* v. *Manchester Ins. & Indem. Co.*, 380 S.W.2d 487 (Mo. 1964); *Emmco Insurance Company* v. *Howell*, 154 So.2d 28 (Ala. 1963); *Kolehouse* v. *Connecticut Fire Ins. Co.*, 65 N.W.2d 28 (Wis. 1954).

prador para la reparación de los daños causados al vehículo; *cf. Montalvo* v. *Valdivieso*, 38 D.P.R. 545, 555 (1928), que surge, no del contrato de venta condicional, sino del acto culposo del causante del daño. (⁴)

 (ii) Aun presumiendo que la cesión hubiese sido suficiente para incluir la acción por daños al vehículo debido a la negligencia de un tercero, la demandante tampoco podría prevalecer. Conforme al Art. 1417 del Código Civil, 31 L.P.R.A. sec. 3942, el deudor que antes de tener conocimiento de la cesión, satisfaga al acreedor, quedará libre de la obligación. (⁵) Para que la cesión surta efectos contra el obligado es preciso que éste tenga conocimiento de ella. *Cámara Insular, etc.* v. *Anadón*, 83 D.P.R. 374 (1961). Santamaría en sus *Comentarios al Código Civil*, tomo II, a la pág. 569, dice: "Aunque la cesión de créditos es válida sin que para ello se hagan precisos la intervención ni el conocimiento del deudor, debe notificarse a éste para prevenir el efecto del pago que pudiera hacer al acreedor primitivo o a sus causahabientes, ya que . . . el pago hecho de buena fe a aquéllos libera al deudor y extingue el crédito." Con igual razón y fundamentos otro tanto puede afirmarse respecto a la cesión de derechos y acciones. Pretender que el obligado al resarcimiento, como adujeron los tribunales inferiores, se asegurara de la legitimidad de la reclamación mediante un examen de los registros públicos en el Departamento de Obras Públicas—de paso, lo único que hubiese revelado es

---

(⁴) Precisamente para tener seguridad en caso de siniestro en cuanto al pago de la parte del precio pendiente, al comprador condicional se le exige el pago de la prima correspondiente de la póliza que contiene el endoso indicado. Por ella la aseguradora renuncia expresamente cualquier derecho de subrogación para dirigirse contra el comprador por cualquier suma pagada bajo tal cubierta.

(⁵) En igual sentido reza el Art. 265 del Código de Comercio, 10 L.P.R.A. sec. 1741, al tratar sobre la transferencia de créditos mercantiles no endosables ni al portador.

que el vehículo había sido adquirido en venta condicional[6] —o por interrogatorios en el pleito civil en que se le demandó, es exigir un requisito que la ley no ordena. Es igualmente de aplicación por similaridad lo que sobre la cesión de créditos apunta Manresa en sus *Comentarios al Código Civil Español* (5a. ed. 1950), tomo X, pág. 410: ". . . el principal interesado en que la notificación se haga es el cesionario, pues sólo después de ella podrá reclamar al deudor el importe del crédito; mas como el deudor no tiene vínculos creados más que con el cedente, y éste es, hasta el momento de la cesión, el sujeto activo del derecho, únicamente lo que el cedente manifieste al deudor es lo que puede tener eficacia contra éste." Con mayor razón en las circunstancias del presente caso en que del propio documento de cesión aparecía que el camión causante del accidente "está asegurado con P.R. & American Insurance". La demandada recurrente cumplió su obligación confiando en la apariencia jurídica de Torres como titular de la causa de acción y no puede exigírsele que, en ausencia de notificación, haga un pago adicional por el mismo concepto.

*Se revocarán las sentencias dictadas por el Tribunal Superior, Sala de San Juan, en 8 de mayo de 1969, y la dictada por el Tribunal de Distrito, Sala de San Juan, en 18 de enero de 1968, y se declarará sin lugar la demanda, con imposición de costas y $500 para honorarios de abogado.*

El Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Hernández Matos no intervinieron.

---

[6] Aunque el documento de cesión tiene fecha de 20 de mayo, el día del accidente, otras circunstancias tienden a indicar que se otorgó en o alrededor de julio, tales como la fecha de su recibo por la U.S. Casualty en julio 28 y el hecho de que los escombros fueron vendidos en julio 14.

Tampoco hay prueba sobre el traspaso de licencia del vehículo.