Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| CASITAS BLANCAS LLC<br><br>Recurrida<br><br>v.<br><br>(SUCN) IRIS TORRES MONTALVO, ET ALS<br><br>Peticionarios | KLCE20231166 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Civil Núm.: HSCI201401095 (208)<br><br>Sobre: Ejecución de Hipoteca |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 19 de diciembre de 2023.

Comparecen ante nos la Sucesión de la señora Iris Francisca Torres Montalvo ("Sra. Torres Montalvo" o "Causante") compuesta por Yamil Gabriel Rodríguez Dones (menor de edad), Pedro Juan Rodríguez Torres, Andrés Javier Rodríguez Vega, Natalie Marie Rodríguez Vega, Karla Marie Rodríguez Vega, Gustavo Alberto Rodríguez Villanueva, Bianca Melissa Rodríguez Villanueva, Héctor Manuel Rodríguez Villanueva (en conjunto, "la Sucesión" o "los Peticionarios") mediante *Petición de Certiorari* presentada el 23 de octubre de 2023. En esta, solicitaron la revisión de la *Resolución* emitida el 13 de julio de 2023, notificada el 18 del mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de Humacao ("foro primario" o "foro *a quo*"). Mediante el aludido dictamen, el foro primario declaró *No Ha Lugar* la moción presentada por los Peticionarios en la cual solicitaron ejercer el derecho de retracto litigioso. Inconforme con el dictamen, el 26 de julio de 2023 los Peticionarios presentaron una solicitud de reconsideración, la cual fue declarada *No Ha Lugar* mediante Resolución *emitida* el 19 de septiembre de 2023, notificada el día 25 del mismo mes y año.

Por los fundamentos que expondremos a continuación, **denegamos** el recurso de epígrafe.

**I.**

Los hechos que originan la presente reclamación surgen cuando el 23 de octubre de 2014, Oriental Bank instó una *Demanda* de cobro de dinero y ejecución de hipoteca contra la Sra. Torres Montalvo.[1] En síntesis, Oriental Bank alegó que el 11 de septiembre de 2002, la Causante suscribió un pagaré de $100,000.00, devengando un interés de 8.125% anual. Para garantizar el pago del referido pagaré, se constituyó una primera hipoteca a favor de Oriental Bank mediante Escritura Número 440, otorgada ante la notario Elaine Villanueva Martínez. Arguyó que la Sra. Torres Montalvo le adeudaba la suma de $83,965.12, más los intereses vencidos que ascienden a $7,390.63, la suma de $482.69 por concepto de cargos por demora, más una suma de $10,000.00 en concepto de honorarios de abogado. Sostuvo, además, que la deuda estaba vencida, era líquida y exigible, por lo que solicitó el pago de las cuantías reclamadas o que se ordenara la venta en pública subasta del inmueble objeto de la hipoteca.

Transcurridos varios trámites en el litigio, el 17 de julio de 2015, notificada el 23 del mismo mes y año, el foro primario dictó *Sentencia Sumaria*, en la que declaró *Con Lugar* la demanda.[2] En consecuencia, condenó a la Causante al pago de las sumas reclamadas y de no pagarse la totalidad de la deuda, se procedería con la venta en pública subasta de la propiedad.

Posteriormente, el 19 de enero de 2016, la Sra. Torres Montalvo presentó *Moción por Derecho Propio*.[3] Mediante esta, solicitó que se suspendiera la celebración de la subasta y que se le

---

[1] Apéndice *certiorari*, págs. 1-5.
[2] *Íd*, págs. 6-10.
[3] *Íd*, págs. 11-12.

nombrara un defensor judicial, toda vez que se encontraba incapacitada por la condición de demencia senil y/o Alzheimer.

En vista de la continuación de los trámites de subasta, el 24 de febrero de 2015, la Sra. Torres Montalvo presentó un escrito intitulado *Moción Asumiendo Representación, Réplica a Moción en Cumplimiento de Orden, Solicitando se Levante Anotación de Rebeldía y Releve de Sentencia en Rebeldía, Solicitando Nombramiento de Defensor Judicial y Solicitud de Vista.*[4] Por virtud de esta, la representación legal de la Causante alegó que el diligenciamiento del emplazamiento fue defectuoso, puesto que la Sra. Torres Montalvo reside en la propiedad objeto de la ejecución y podía ser emplazada personalmente. Sostuvo que la Sra. Torres Montalvo no estaba capacitada en ninguna etapa del proceso por su padecimiento de demencia senil y alzhéimer, por lo cual no podía oponerse al mismo. Expuso, además, que la propiedad objeto de la ejecución era su residencia principal, por lo que tenía derecho a los beneficios de la mediación compulsoria instituida en la Ley Núm. 184 de 17 de agosto de 2012.

Por tales razones, solicitó lo siguiente: 1) que se levantara la anotación de rebeldía; 2) que se dejara sin efecto la *Sentencia Sumaria* emitida; 3) que se señalara una vista para el nombramiento de un defensor judicial; 4) que le permitiera presentar alegaciones; 5) que refiera el caso a mediación; y 6) paralizaran los procedimientos hasta que culminara el proceso de mediación.

Así las cosas, el 26 de junio de 2017, notificada al próximo día, el foro primario emitió *Resolución* en la que declaró *No Ha Lugar* las solicitudes de la Sra. Torres Montalvo sobre dejar sin efecto el emplazamiento por edictos, la anotación de rebeldía, la *Sentencia Sumaria* dictada y la subasta.[5] Razonó el foro primario que en la

---

[4] *Íd*, págs. 17-21.
[5] *Íd*, págs. 22-29.

vista evidenciaria celebrada el 21 de febrero de 2017, la Causante no logró demostrar que Oriental Bank tuviera conocimiento de su alegada condición de incapacidad. A su vez, concluyó que las cartas sometidas en evidencia sobre la condición de la Causante no establecían que esta ha sido diagnosticada con demencia senil o alzhéimer. Resolvió, además, que el testimonio del emplazador le mereció entera credibilidad sobre las diligencias realizadas para lograr emplazar personalmente a la Sra. Torres Montalvo.

Insatisfecha con la determinación del foro primario y luego de transcurridos varios trámites procesales, la Sra. Torres Montalvo acudió ante esta Curia mediante recurso de apelación (KLAN201701251). El 22 de febrero de 2018, un panel hermano dictó *Sentencia* en la que revocó el dictamen emitido por el foro primario.[6] En particular, este foro apelativo determinó que el emplazamiento realizado a la Sra. Torres Montalvo fue válido. En cuanto al asunto de la incapacidad, se resolvió que el foro primario tenía la obligacion de considerar el estado mental de la Causante antes de celebrar la segunda subasta. Por lo cual, anuló la venta en pública subasta de la propiedad y ordenó al foro primario a "hacer una determinación sobre el estado mental de [la Causante] y, de entenderlo necesario, nombrar un defensor judicial […]." La aludida sentencia no fue apelada por lo que la misma advino final y firme.

Celebrada la vista de incapacidad ordenada por el Tribunal de Apelaciones[7] y luego de la notificación del fallecimiento de la señora Torres Montalvo, el 23 de marzo de 2023, la Sucesión presentó un escrito intitulado *Moción para Ejercer Retracto de Crédito Litigioso a Tenor con la Sección 2-306 de Ley de Transacciones Comerciales y el Nuevo Código Civil.*[8] En esta, señalaron que San Carlos Mortgage

---

[6] *Íd*, págs. 59-72.
[7] En la vista se determinó que la Causante no tenía capacidad para conocer los procedimientos en su contra y se le nombró un defensor judicial. Véase *Resolución* del 13 de julio de 2023 en el Apéndice *certiorari*, pág. 101.
[8] *Íd,* págs. 90-94.

LLC. ("San Carlos"), fue sustituido como parte demandante por ser el nuevo tenedor del pagaré hipotecario objeto del litigio. Añadió que San Carlos no es un tenedor de buena fe del pagaré y solicitó el retracto del crédito litigioso. Posteriormente, la Sucesión presentó un escrito al foro primario solicitando nuevamente el retracto del crédito litigioso al haberse adquirido el pagaré por Casitas Blancas LLC ("Casitas Blancas").

Así las cosas, el 13 de julio de 2023, notificada el 18 del mismo mes y año, el foro primario emitió *Resolución*. Mediante esta, aclaró que la sentencia emitida por el Tribunal de Apelaciones el 22 de febrero de 2018, no tuvo la intención de dejar sin efecto la *Sentencia Sumaria* emitida el 17 de julio de 2015. Por tal razón, la *Sentencia Sumaria* dictada por el foro primario en 2015 es una final, firme e inapelable. En vista de que los procedimientos de ejecución de sentencia se llevaron a cabo antes de hacer la determinación de incapacidad de la Causante, solo restaba la celebración de una nueva subasta y posterior venta judicial. Como consecuencia de ello, resolvió que no procedía la solicitud de retracto de crédito litigioso.

En desacuerdo, el 26 de julio de 2023, la Sucesión presentó *Moción de Reconsideración* y el 13 de septiembre de 2023, la Casitas Blancas presentó su oposición mediante escrito intitulado *Moción en Cumplimiento de Orden y Solicitud de Remedio*. Mediante *Orden* emitida el 19 de septiembre de 2023, notificada el 25 del mismo mes y año, el foro primario declaró *No Ha Lugar* la solicitud de reconsideración.[9]

Insatisfecho, el 23 de octubre de 2023, los Peticionarios acudieron ante esta Curia y formularon los siguientes señalamientos de error:

> Erró el TPI al resolver que el crédito de la recurrida no es litigioso, desestimar la moción de retracto de crédito litigioso, y omitir que el pagaré de este caso, no se trata

---

[9] *Íd,* págs. 109-118.

de un instrumento negociable, únicos créditos que gozan de protección contra el retracto.

Erró el TPI al concluir que la peticionaria no cumplió con la mitigación de pérdidas.

Erró el TPI por inacción y abuso de discreción debido a ello, el crédito consta a nombre del acreedor en el Registro de la Propiedad y el CRIM aún cuando la subasta fue anulada. Su desatención a múltiples mociones solicitándole la acción correspondiente provocó que la mitigación de pérdidas no pudiera concluirse. Ello, es secuela de otras órdenes emitidas por el Tribunal en ausencia de partes indispensables.

Erró el TPI al determinar que existe una sentencia final y firme aún cuando determinó previamente que la demandada Torres Montalvo estaba incapacitada a los fines de enfrentar el pleito y le nombró un defensor judicial.

Erró el Tribunal al no resolver la moción de la propia demandante donde informó que no había notificado su moción en cumplimiento de orden y que acceda a que se dejara sin efecto la Resolución en reconsideración.

El 27 de octubre de 2023, le concedimos un término de diez (10) días a la parte Recurrida para que mostrara causa por la cual no debíamos expedir el auto de *certiorari* y revocar la determinación recurrida. En cumplimiento con lo ordenado, el 30 de noviembre de 2023, la parte Recurrida presentó un escrito intitulado *Moción en Cumplimiento de Resolución.*

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la situación fáctica ante nuestra consideración.

## II.

### A. *Certiorari*

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, 211 DPR ___ (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. *Íd.* Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005).

Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró, supra,* pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de

derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

### B. Crédito Litigioso

La cesión de crédito es un negocio jurídico entre un acreedor (cedente) y una tercera persona (cesionario) mediante el cual el primero transmite al segundo la titularidad de un crédito (crédito cedido). *Consejo de Titulares v. C.R.U.V.*, 132 DPR 707, 717 (1993), citando a *IBEC v. Banco Comercial*, 117 DPR 371, 376 (1986). Véase, además, L. Diez Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1979, Vol. 1, pág. 789. El Art. 1211 del Código Civil de Puerto Rico, 31 LPRA sec. 9572, protege al deudor que no es notificado de la cesión y paga al acreedor original. Por ello, el Tribunal Supremo ha dicho que es necesario establecer por modo auténtico la fecha de la cesión y notificarle dicho negocio jurídico al deudor. *Consejo de Titulares v. C.R.U.V.*, *supra*, pág. 718.

El Art. 1220 del Código Civil de Puerto Rico, versa sobre la cesión de los créditos litigiosos y establece:

> Si se cede un crédito litigioso, el deudor tiene derecho a extinguirlo mediante el reembolso al cesionario de lo que este haya pagado, de las costas ocasionadas y de los intereses del pago desde el día cuando se hizo. Se tiene por litigioso un crédito desde el momento cuando se contesta la demanda. El deudor puede invocar su derecho dentro del término de caducidad de treinta (30) días, contados desde que el cesionario le reclama el pago. 31 LPRA sec. 9581.

El crédito es litigioso desde que se contesta la demanda y está en disputa. *Consejo de Titulares v. C.R.U.V.*, *supra*, pág. 726. Al momento de la cesión o transmisión del crédito no puede existir sentencia firme en el pleito que declare el crédito, pues los derechos deben ser inciertos para reputarse el crédito como litigioso *Íd.*, citando a *Martínez, Jr. v. Tribunal de Distrito*, 72 DPR 207, 209 (1951). Véase, además, *Cámara Insular etc. v. Anadón*, 83 DPR 374, 386 (1961).

La cesión de los créditos litigiosos tiene una restricción al concederle al deudor el derecho al retracto. *Consejo de Titulares v. C.R.U.V., supra.* El retracto de un crédito litigioso "es la figura jurídica que permite a un deudor extinguir una obligación pagando el precio que el cesionario de su crédito pagó por este." *DLJ Mortgage v. SLG Santiago-Ortiz,* 202 DPR 950, 959 (2019). El propósito del retracto es "impedir el tráfico inmoral con los créditos litigiosos, que eran comprados a bajo precio, para obtener luego una excesiva ganancia al cobrarlos íntegramente del deudor" *Íd.*, citando a D. Espín Cánovas, *Manual de Derecho Civil Español*, Madrid, Ed. Rev., Der. Privado, 1983, Vol. III, pág. 240.

Por otro lado, el Artículo 1212 del Código Civil de Puerto Rico, dispone que la acción ejercitada por un cesionario en el caso de una cesión de una cosa litigiosa no aplica a la cesión de un instrumento negociable. En particular, el precepto dispone como sigue:

> En el caso de la cesión de un derecho litigioso, la acción que ejercita el cesionario es sin perjuicio de cualquier reclamación en contrario o de otro derecho existente al tiempo de notificarse la cesión, o antes; pero esto no es aplicable a la cesión de un instrumento negociable, traspasado de buena fe y por valor, antes de su vencimiento. 31 LPRA sec. 3942a.

### III.

Luego de evaluar la totalidad del expediente, a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra*, no identificamos razón por la cual este Foro deba intervenir con el dictamen recurrido. Ello, ya que no se configura ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos

que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

**IV.**

Por los fundamentos antes expuestos, ***denegamos*** el recurso de *certiorari.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA.  LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones